(No. 35359.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HENRY MORTON, JR., Plaintiff in Error.

*Opinion filed January 20, 1961.*

GERARD L. ARONIN, of Chicago, for plaintiff in error.

WILLIAM L. GUILD, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY, Assistant State's Attorney, of counsel,) for the People.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Henry Morton, Jr., was convicted of robbery upon a trial before the court and was sentenced to imprisonment in the penitentiary for a term of not less than one nor more than eight years. Upon this writ of error he contends that his guilt was not established beyond a reasonable doubt, and that a statement made by the prosecuting attorney deprived him of a fair trial.

William Willams, the victim of the alleged robbery, testified that he was entering a poolroom about midnight to buy some pop when he was waylaid in the doorway by

three men. One of them was the defendant, whom he had often seen before; the other two men were unknown to him. They took his wallet and eight dollars. He also testified that Odell Norman, the manager of the pool hall, witnessed the robbery and shouted to the men to release him, whereupon the men pushed him to the floor and ran off. Thereafter, Williams said, he went briefly into the pool hall, and then out again to look for police officers. A squad car was passing by, and the officers, acting upon Williams's complaint, arrested the defendant about "five doors" from the pool hall.

Odell Norman testified that he saw the three men, one of whom was the defendant, who was known to him, scuffling with Williams in the doorway and that the three fled when he shouted to them to let Williams go. In response to a question as to how long Williams had stayed in the poolroom, he answered, "Well, he went right out—I'd say about a half an hour." Norman testified that while Williams might have had a drink, he was sober. He also testified that Morton, who was present when he told Williams to call the police, denied that he had robbed Williams.

Defendant testified that he had been in an adjoining tavern breaking up a fight, and that when he left the tavern and entered the pool hall Williams accused defendant of robbing him. Defendant quotes himself as replying, "You are wrong Mister, I haven't robbed you. The time you said that you were robbed, I happened to be in the poolroom breaking up a fight." Defendant testified that he volunteered to go with Williams to find the police, that they walked out together and found a police car with one policeman in the back seat, that another policeman soon returned to the car, and that the four of them then went to the station.

The arresting officer testified that he had been hailed by Williams while driving along the street in a squad car with his partner, and that Williams told them that he had been robbed by three men, one of whom he could identify. The

officers put Williams in the squad car, "and started to pull off and he pointed out the defendant." He testified that Williams was sober. Another witness testified that the defendant had been present in the tavern during a fight there, but there is no testimony that the fight and the robbery occurred simultaneously.

In our opinion the trial court was warranted in finding that the evidence established the defendant's guilt beyond a reasonable doubt.

The second contention of the defendant relates to a statement made by the prosecuting attorney before the trial commenced. Upon his arraignment the defendant had demanded a jury trial, and when the case was called for trial his attorney stated that the case was to be tried by a jury. Thereupon, apparently by way of request for a continuance, the assistant State's Attorney said: "we have two provables in New York, possession and burglary. What we want to do is write and get certified copies and put them in in the event he takes the stand, unless he tells us he is not going to testify." Thereafter defendant's attorney said, "Wait a minute. He said he changed his mind. He wants a bench trial now. So there will be no problem then." The assistant State's Attorney replied, "All right, fine." Thereupon the court admonished the defendant as to his right to be tried by a jury, and the defendant repeated his desire to waive a trial by jury and signed a formal waiver. The trial then commenced. Upon the trial the defendant testified, but he was not cross-examined and no attempt was made to impeach him by showing previous convictions. The defendant contends "that the State's tactic was so prejudicial that defendant was deprived of a fair trial."

In the occurrence complained of we do not sense a deliberate effort to prejudice the trial judge against the defendant. The defendant's attorney made no objection. Of course it was improper to advise the judge of the alleged former convictions. The prosecution was either ready to

try the case or it was not, and it had no right to an advance commitment from the defendant as to whether or not he proposed to take the stand. But in determining whether or not the defendant was deprived of a fair trial we consider all of the evidence adduced upon the trial, (*People* v. *Ashley,* 18 Ill.2d 272; *People* v. *Franklin,* 415 Ill. 514,) and we take into account, too, the fact that the case was tried by a judge rather than by a jury. In the light of the strong case made against the defendant by the evidence, we see no reason to believe that the result would have been any different if the remark complained of had not been made.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*