Kenneth JONES, Appellant,

v.

UNITED STATES of America, Appellee.

Willis CAMPBELL, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 18410, 18411.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 10, 1964.

Decided Oct. 15, 1964.

Mr. John T. Miller, Jr. (appointed by this court), Washington, D. C., for appellant in No. 18,410.

Mr. Paul F. Interdonato (appointed by this court), Washington, D. C., for appellant in No. 18,411.

Mr. Jerome Nelson, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Miss Barbara A. Lindemann, Asst. U. S. Attys., were on the brief, for appellee.

Mr. Gerald E. Gilbert, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and WASHINGTON and WRIGHT, Circuit Judges.

PER CURIAM:

Appellants were convicted of housebreaking[1] and larceny.[2] The evidence as to the *corpus delicti* offered by the Government showed that a window in the premises in suit had been "forced and entered," that a small safe was missing, and that the safe was subsequently found near the Potomac River. As to identification, the Government offered one witness who testified that around 11:30 P. M. on the date stated in the indictment he watched appellants as they passed the premises several times. He then saw appellant Jones drive a truck to the side door where one of the appellants was observed "in the entrance" or "in the vicinity" of the door. The witness then noticed that the side doors of the truck were open and "two men was in there working, or doing something, some activity in the truck." Later he saw the truck being driven away.

In her opening statement the prosecuting attorney told the jury that the Government's witness "observed one of [the defendants] come out from the doorway of that store. He observed them apparently working in or loading something into their Volkswagen truck." But the proof did not bear this out. The witness did not testify that he had seen one of the defendants "come out from the doorway" or that he had seen them "apparently working in or loading something into their Volkswagen truck." The prosecuting attorney nevertheless pressed the point:

"Q. Now, you observed one of the defendants coming out of the side doorway, you're talking about?

"A. I don't know whether he was coming out. He was in the vicinity of the side door."

On re-direct the prosecuting attorney asked the same witness:

"Q. Now, sir, when you observed a person coming out of that entranceway and then the activity, the working or loading activity in the truck, where were you at that time?

"A. Well, I didn't say—

"MR. STERNBERG [counsel for defendant Jones]: Your Honor, I must object to the form of the question.

"THE COURT: We will strike that question and the jury will disregard it. I do not remember any testimony about any loading activity."

■■ Thus on three separate occasions during a one-day trial, Government counsel sought to shore up obvious weaknesses in the Government's case. It is true that the court instructed the jury that the opening statement of counsel was not evidence. It is also true that the answers to the questions containing the factual assertions denied them and that the jury was instructed to disregard one of the questions. Nevertheless, we are not in a position to say, in a case as paper-thin as this one appears to be,[3] that the suggestions contained in the opening statement and in the questions were not responsible, in some degree at least, for the convictions in these cases.[4]

1. 22 D.C.CODE § 1801 (1961).

2. 22 D.C.CODE § 2202 (1961).

3. It is generally held that whether improper conduct of Government counsel amounts to prejudicial error depends, in good part, on the relative strength of the Government's evidence of guilt. McFarland v. United States, 80 U.S.App. D.C. 196, 150 F.2d 593 (1945); and see People v. Morton, 21 Ill.2d 139, 171 N.E.2d 592 (1961), and People v. Carr, 163 Cal.App.2d 568, 329 P.2d 746 (1958).

4. We are also troubled by tactics used by Government counsel to impeach the appellants' testimony. On three occasions during cross-examination of appellant Jones, Government counsel misstated Jones' testimony on direct. Whether

Under the circumstances, the convictions must be set aside and the cases remanded for a new trial.

Since the cases are remanded for retrial, a word should be said about the instructions given by the trial court. The court's definition of "reasonable doubt" included the following:

"* * * [I]f * * * you can truthfully say that you have an abiding conviction of the defendants' guilt, or either of their guilt, such as you would be *willing to act* upon in the more weighty and important matters relating to your personal affairs, then as to such de-

intended or not, this may well have created the impression in the jury's mind that Jones' answer on cross contradicted his testimony on direct. On cross-examination of appellant Campbell, Government counsel suggested that Campbell had threatened the witness who had identified him at the lineup. No evidence was offered to substantiate this charge.

Another tactic, the propriety of which we need not consider for decision in this case, involved the use, for impeachment purposes, of petty misdemeanor convictions (drunk and disorderly conduct), unrelated to the traits of honesty or truthfulness. Compare Bostic v. United

fendants you have no reasonable doubt." (Emphasis added.)

"We think this section of the charge should have been in terms of the kind of doubt that would make a person *hesitate to act,* see Bishop v. United States, 71 App.D.C. 132, 137–138, 107 F.2d 297, 303, rather than the kind on which he would be *willing to act.*" Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954). (Emphasis added.) See also Egan v. United States, 52 App.D.C. 384, 393, 287 F. 958, 967 (1923).

Reversed.

States, 68 App.D.C. 167, 94 F.2d 636 (1937), with Clawans v. District of Columbia, 61 App.D.C. 298, 62 F.2d 383 (1932). See also Campbell v. United States, 85 U.S.App.D.C. 133, 135, 176 F.2d 45, 47 (1949); Sanford v. United States, 69 App.D.C. 44, 46, 98 F.2d 325, 327 (1938); Uniform Rule of Evidence 21, HANDBOOK OF THE NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS 175 (1953); Rule 106 (1) (b), AMERICAN LAW INSTITUTE, MODEL CODE OF EVIDENCE 117 (1942); Ladd, *Witnesses,* 10 RUTGERS L.REV. 522, 531–532 (1956); Tyree, *Evidence,* 10 RUTGERS L.REV. 324, 339 (1955).