James COOPER, Appellant,

v.

UNITED STATES of America, Appellee.

Percy TAYLOR, Appellant,

v.

UNITED STATES of America, Appellee.

Frederick CHILDS, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 19340, 19347, 19348.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 19, 1965.

Decided Jan. 31, 1966.

Petition for Rehearing En Banc in No. 19,348 Denied March 31, 1966.

Mr. Mark B. Sandground, Washington, D. C. (appointed by this court), for appellant in No. 19340. Mr. Philip W. Amram, Washington, D. C. (appointed by this court), was on the brief.

Mr. Joel H. Levy, Washington, D. C. (appointed by this court), for appellant in No. 19347. Mr. Paul Dobin, Washington, D. C. (appointed by this court), was on the brief.

Mr. Alfred L. Scanlan, Washington, D. C. (appointed by this court), for appellant in No. 19348.

Miss Carol Garfiel, Asst. U. S. Atty., with whom Messrs. John C. Conliff, Jr., U. S. Atty. at the time of argument, Frank Q. Nebeker and David Epstein, Asst. U. S. Attys., were on the brief, for appellee. Mr. John A. Terry, Asst. U. S. Atty., also entered an appearance.

Before BAZELON, Chief Judge, EDGERTON, Senior Circuit Judge, and BURGER, Circuit Judge.

### EDGERTON, Senior Circuit Judge:

The three appellants were tried together and convicted of robbery. There was ample evidence that about 8 o'clock in the evening of November 10, 1964, someone violently knocked down one Hill and robbed him while he was unconscious. Hill "couldn't say definitely" whether he was attacked by one, two, or three people, but thought he was attacked by "approximately three people that were together, seemingly." No eyewitness testified.

■ There was circumstantial evidence, including possession of what seemed to be fruits of the crime, against appellants Childs and Taylor. There was evidence that they were present when the crime was committed and had "accosted" Hill just before it was committed. The evidence was sufficient to sustain their convictions. Although the court's use of the word "accost" may have been somewhat misleading and the charge to the jury contained statements about the evidence which were not strictly accurate, we think it fairly clear that these matters did not affect the substantial rights of Childs or Taylor. We therefore affirm their convictions. Rule 52 (a), F.R.CRIM.P.

The court charged the jury that "While Hill identified Cooper as one of the three persons who attacked and robbed him, there was no corroborating evidence offered as to Cooper." Hill did identify Cooper as one of three persons who were present when he was attacked and robbed. But as I understand the record, Hill did not and could not identify Cooper as one of the persons who attacked and robbed him. Because Hill was "hit from behind" he did not see who attacked him, and because he was unconscious when he was robbed he did not see who robbed him.

By way of identifying Cooper as one of the persons present when he was attacked, Hill testified only that he "caught a good glimpse" of Cooper, "just a fleeting second, that's all", or "fleeting seconds", when Cooper "came up" or "came by" and handed two pennies to Taylor, who had been begging Hill for money and was "waiving his hands", "making all kinds of gestures", and blocking Hill's path to his car.

The court's statement that "there was no corroborating evidence offered as to Cooper" was not strictly accurate. Though no one but Hill testified that Cooper was at the scene of the crime, and no fruits of the crime were found on Cooper, there was testimony that he knew Childs and Taylor, was with them soon after the crime, and was arrested at 8:30, although Cooper and two girls testified he was with them until two minutes of 9:00.

The court charged the jury, too broadly as Judge Bazelon points out, that "[i]f you are convinced by Hill's identification, you have a right to find Cooper guilty." The court continued, "On the other hand, you may ask yourself whether the identification is sufficiently convincing in view of the fact that Hill had seen Cooper but for a fleeting moment that evening and that there may be a possibility of error in the identification. If you feel that way you would

be justified in having a reasonable doubt as to Cooper and finding him not guilty." I think this understates the matter. It appears to me, though not to my colleagues, that a reasonable juror could hardly avoid a reasonable doubt that Cooper was present at the time of the crime, and could not avoid a reasonable doubt that he took part in the crime. Even regardless of the detailed and consistent alibi testimony of Cooper and two girls, I think the Government's evidence was only sufficient to create a reasonable suspicion, or at most a likelihood, that Cooper was guilty. Perhaps the jury could reasonably think he was probably guilty, but this is not enough to support a criminal conviction. I would set aside Cooper's conviction and direct the District Court to enter the judgment of acquittal which I think should have been entered at the trial. 28 U.S.C. § 2106. But as I am alone in this view, for the purposes of decision I join Judge Bazelon in ordering a new trial.

Nos. 19347 and 19348 affirmed.

BAZELON, Chief Judge (concurring in Nos. 19347 and 19348 with a separate opinion in No. 19340).

█ I concur in Judge Edgerton's opinion affirming the convictions of appellants Taylor and Childs in Nos. 19347 and 19348 respectively. While the evidence against appellant Cooper in No. 19340 is indeed weak, I think it sufficient "by a hair's breadth" to avoid the verdict of acquittal which Judge Edgerton would direct.[1] But "the closeness of the issue * * * imposed an obligation on the trial judge to instruct the jury with extreme precision, as he realized, and on us to review the charge with what, in a less doubtful case, would be undue meticulousness."[2] Upon such scrutiny of the instructions, I find plain error requiring reversal for a new trial under Rule 52(b), Fed.R.Crim.P.[3]

Two questions were presented for the jury by this case: first, was appellant Cooper the third man the victim, Hill, saw just before the attack; and second, if Cooper was present, did he participate in the crime. On the issue of presence, Cooper's evidence tended to show that he was not at the scene of the crime; but Hill testified that, just after he emerged from the liquor store and was stopped by appellant Taylor's begging, Cooper approached Taylor and gave Taylor two cents. Hill's identification of Cooper was based on a hurried glance, but was unequivocal.

Even if Cooper was present, there was no direct evidence that he participated in the crime. Hill was unable to identify the man or men who assaulted him and no eyewitnesses testified. He observed "quite a few" people walking up and down the main street in front of the liquor store when the assault occurred. Appellant Taylor testified that "there was [sic] a whole lot of fellows on the street at that time that hung around the store." There was no contradictory evidence. Therefore, since the assault took place on the edge of the apron in front of the store and since Hill was struck from behind and did not see his assailants, we may not exclude the possibility that someone other than one of the three appellants assaulted him. The possibility that Cooper was a bystander and not a participant is heightened by the fact that Taylor and Childs were found with stolen property on their persons while none was found on appellant Cooper.

On the other hand, there was evidence from which to infer that Cooper

1. United States v. Garguilo, 310 F.2d 249, 254 (2d Cir. 1962); see also Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

2. United States v. Garguilo, supra note 1, at 254, of 310 F.2d, citing Glasser v.

United States, 315 U.S. 60, 67, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

3. See Barry v. United States, 109 U.S. App.D.C. 301, 287 F.2d 340 (1961); Mullen v. United States, 105 U.S.App.D.C. 25, 263 F.2d 275 (1958); Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612 (1951).

was an active participant or at least an aider and abetter of the crime. Cooper's payment of two cents to his friend Taylor could be viewed as a signal which in some way "triggered" the robbery, since immediately after the payment Taylor informed Hill that he could go and, after taking six steps, Hill was struck from behind. Also, Cooper was seen in the company of Taylor and Childs approximately fifteen minutes later and, after reaching Taylor's sister's home, urged Taylor to hurry because "they had to go." [4]

In the general introductory instructions, the trial court correctly discussed the elements of robbery, and aiding and abetting although the discussion was rather abstract. Later, when the trial judge chose to comment on the evidence relating to appellant Cooper, he said only:

> While Hill identified Cooper as one of the three persons who attacked and robbed him, there was no corroborating evidence offered as to Cooper.
>
> Now, as I said before, as a matter of law corroboration is not required. If you are convinced by Hill's identification, you have a right to find Cooper guilty. On the other hand, you may ask yourself whether the identification is sufficiently convincing in view of the fact that Hill had seen Cooper but for a fleeting moment that evening and that there may be a possibility of error in the identification. If you feel that way you would be justified in having a reasonable doubt as to Cooper and finding him not guilty.

The instructions ended almost immediately thereafter.

A trial judge must exercise great care when he summarizes specific evidence in the case for the jury, and even greater care is required if he chooses to go further and instruct the jury on the legal consequences of specific evidence. Since Hill testified that he had been unable to see who actually attacked and robbed him, the first sentence of the above quoted instruction seriously misstated the evidence against appellant Cooper, and by itself might be sufficiently prejudicial to call for a new trial.[5] Even more serious, however, is the fact that, when the trial judge focused attention on the evidence in the case relevant to appellant Cooper, the judge charged that Cooper's guilt depended solely upon Hill's identification, notwithstanding the fact that the identification, if believed, only served to place Cooper at the scene of the crime.

Because Cooper defended primarily on the ground that he was not present,[6] it is perhaps understandable why the trial judge failed to instruct the jury specifically with respect to Cooper that participation was needed as well as presence. But Cooper's participation in the crime, far from being admitted, was in some doubt under the evidence. Thus, when the trial judge told the jury that they could convict Cooper on Hill's identification, clarity and fairness to appellant required the judge to point out that identification would establish Cooper's presence only, and that conviction would also require a belief that he joined in the robbery or aided in its commission.

No objection was made to the instruction at trial.[7] Similar instructions were

---

4. Cooper was arrested along with Taylor and Childs. The arresting officer testified that Hill's description of the suspects was only "a Negro male, light skinned, wearing a long black coat, with black pants, and round face, * * * along with two other males with short jackets."

5. See Blunt v. United States, 100 App.D.C. 266, 276, 244 F.2d 355, 365 (1957); cf. Jones v. United States, 119 U.S.App. D.C. 213, 338 F.2d 553 (1964).

6. Cooper in no way conceded that, if he was present, his participation in the crime was established. Byrd v. United States, 119 U.S.App.D.C. 360, 342 F.2d 939 (1965).

7. The point was called to our attention by appellant's brief which stated:
"He [the trial judge] told the jury, in the clearest English, that the only thing they need find was that Hill's identification of Cooper was correct.

held plain error in United States v. Garguilo, 310 F.2d 249 (2d Cir. 1962), where Macchia, a co-defendant, was convicted on strong evidence that he had been present at the scene of the counterfeiting and knew what was going on, although the evidence of participation was weak. The trial judge there initially gave an instruction on aiding and abetting.[8] Immediately thereafter, he told the jury that, assuming Macchia was present at the site of the counterfeiting, the question was whether he knew what was going on. But this time he did not mention that participation was essential for guilt.[9]

Judge Friendly, writing for the Court of Appeals in *Garguilo*,[10] found that the trial judge's initial instruction on aiding and abetting was stated "with entire correctness" and "would have been adequate, indeed excellent, in the usual trial."[11] But the trial judge's subsequent instruction was held to be defective because it "related solely to the issue of 'conscious, intelligent awareness of what was going on,'" without linking this to the essential element of participation. The initial instructions "with respect to purposive participation, although correct, were rather abstract." Once the trial judge undertook to relate the specific facts of

and that, without finding else, they could find Cooper guilty, which they did. He did *not* tell the jury that, in addition to finding Hill's identification of Cooper, as a man he saw, to be correct beyond a reasonable doubt, they must also find, in addition, beyond a reasonable doubt, that Cooper was one of the actual attackers of Hill and one of the robbers."

8. The charge stated:
"[A]ny person who voluntarily takes an active part in promoting of [sic] facilitating the commission of a crime, with knowledge of the unlawful objective, bears the same responsibility under the law as one who directly commits the offense * * *. [T]he law makes equally responsible any person who consciously associated himself with the criminal venture with the intent that his conduct aids its success. Now, such person as Mecchia [sic] need not have participated in all the transactions which were involved in the commission of the crime. He is equally liable if you find that he commanded, requested, encouraged, provoked or aided another, in this case Garguilo, in planning or committing the crime. However, it is essential that he knew of the criminal purpose and intended his participation to aid in its accomplishment."

9. The charge continued:
"Let me try to give that a little bit more point in light of the facts of this case. There is testimony to the effect that Mecchia was in the company of Garguilo at the printing plant of Villari and at the photo studio of Dellamonico. I am assuming now that you believe that testimony * * *.
"Now let us take it from there, making those basic assumptions, Was Mec-

chia close enough to the transactions, to the conversations, to the general atmosphere of the transactions to know what was going on? Did he have an intelligent, conscious awareness of what was going on? And if he did have that conscious, intelligent awareness of what was going on, was it sufficient to constitute an aiding or abetting within the terms of the definition I gave you?
"For instance, let me give you a ridiculous example, not because it happened in this case but because I think it will help you to understand what the definition is about and why this is so important. Suppose Garguilo took Villari outside to his car, and suppose there was a man in the back seat who was fast asleep and all rolled up in a rug or with his overcoat over his head, and there is a prone body there, and he says, 'There is my pal, my partner, and my co-conspirator.' Let's say he used all those words and then he walked away with Villari, Obviously, if this man is fast asleep and he is wrapped up in a coat or a rug, he can't possibly have any sense of awareness and he can't be participating in the other man's transaction or statements."
Upon request, the trial judge in *Garguilo* later repeated his general instruction on aiding and abetting, see note 8, *supra*, and then gave specific, contrasting hypothetical cases turning on knowledge.

10. Chief Judge Lumbard dissented to that part of the majority opinion that "implies that there was not enough evidence from which the jury could conclude that Macchia was guilty as an aider and abettor."

11. All quotations in the text are found in United States v. Garguilo, 310 F.2d 249, 254 (2d Cir. 1962).

the case to the law, with hypothetical illustrations, the jurors were never

> told in plain words that mere presence and guilty knowledge on the part of Macchia would not suffice unless they were also convinced beyond a reasonable doubt that Macchia was doing something to forward the crime—that he was a participant rather than merely a knowing spectator.[12]

Accordingly, the court held that:

> Reading the entire charge, we cannot overcome a fear that the judge, quite unwittingly and simply by emphasis, may have led the jury to believe that a finding of presence and knowledge on the part of Macchia was enough for conviction. * * * In the usual case we should not think of finding reversible error in such a charge when there was no objection, or perhaps even if there had been. However, in the exceptional circumstances here presented, and in the light of our powers under 28 U.S.C. § 2106 and F.R.Crim.Proc. 52(b), we believe that the interests of justice as between the Government and Macchia will be best served by reversal and remand for a new trial.[13]

The instructions in the present case are even more vulnerable. Here, as in *Garguilo,* the evidence of participation is quite weak. There, the jury was not specifically told that knowledge was sufficient for guilt. On the contrary, the trial judge admonished the jury:

> You have got to establish that [intelligent awareness] first and, once you established that, then determine the extent to which he aided, abetted or encouraged.

Here, on the other hand, the trial judge not only misstated the evidence by saying "Hill identified Cooper as one of the three persons who attacked and robbed him," but he also instructed the jury that "if you are convinced by Hill's iden-

tification, you have a right to find Cooper guilty."

Judge Edgerton authorizes me to say that he concurs in my view of the instructions, and for the purposes of decision, joins in ordering a new trial.

No. 19340 is reversed and remanded for a new trial.

BURGER, Circuit Judge (concurring in Nos. 19347 and 19348 and dissenting in No. 19340):

I concur in the affirmance of the conviction of Taylor and Childs and I would also affirm the conviction of Cooper. Judge Edgerton would reverse the jury as to Cooper and set him free on the ground that no reasonable mind could find him guilty on this record; Judge Bazelon would reverse and order a new trial because of his view that the charge was inadequate on aiding and abetting. I find no error in submitting Cooper's case to the jury and I see none, and certainly no "plain error" under Rule 52(b), FED.R.CRIM.P., in the Court's charge to the jury.

A statement of the facts is essential to my position. At the close of the government's case, the evidence against Cooper was substantially as strong as that against the other two defendants, except for the one fact that none of the loot was found on him. Hill, the victim of the robbery, testified that while walking back to his car after making a purchase at a liquor store he had been accosted and detained on the street by Taylor, who demanded twenty-five cents of him. Childs, whom Hill had noticed watching him while he was in the liquor store, walked past Taylor and Hill and sat on a low wall, and Cooper then came up and offered two cents to Taylor, who had reduced his demands on Hill to a nickel. Hill testified that it seemed to him that Taylor and Cooper knew each other. After Cooper made his offer of two cents, Taylor told Hill, "you can go now." Hill had taken about six steps on the way to his car when he was hit

---

12. *Ibid.*

13. *Id.,* at 254–255.

from behind, knocked unconscious, and robbed. Hill had had a good look at Childs in the liquor store and at Taylor while being detained on the street. He also testified that he "caught a good glimpse" of Cooper when Cooper offered two cents to Taylor.

The government also introduced testimony of one of the police officers who responded to the scene within minutes of the robbery and who after talking with Hill drove off in search of men who would match Hill's description of the three he believed had attacked him. The police saw three men, whose appearance conformed to Hill's descriptions of Taylor, Childs, and Cooper, walking down the street. One of the officers left the car and continued his surveillance while the other went to transport Hill to the scene. The waiting officer saw Taylor enter a house while Cooper and Childs remained outside. All this occurred minutes after the robbery. The evidence before the jury also showed that while in the house Taylor gave some money to his sister and some money and a wallet to his nephew, that both Cooper and Childs later came into the house, and that *Cooper* told Taylor "to come on because they had to go." Taylor's sister testified to Cooper's statement.

The three men were thereafter arrested, and Hill at once identified them as the three he believed had attacked him. The police found on Taylor a bottle of liquor of the same type, quantity, and brand that had been taken from Hill while Hill was unconscious. Childs tried to hide some money as he was being searched by the police; this amount, together with what Taylor had given his nephew and his sister and with what was in the wallet, which Taylor's nephew gave to the police and which Hill identified as being his, added up to the precise amount taken from Hill.

Having been hit from behind, Hill of course did not see the person or persons who struck the blow. But all the circumstances are such as to warrant reasonable men in believing that Appellants had participated in the attack and robbery. One of them had stopped Hill and detained him while the other two came up; he was hit from behind after turning away from them and walking six steps; the testimony of Hill was that these three men were the only persons present in the immediate vicinity.

It was not necessary to find stolen goods on any of the Appellants in order to allow the jury to decide that the Appellants participated in the robbery. If no stolen goods had ever been recovered and if there had been no testimony about the disposition of them, there could well have been enough evidence to go to the jury on Hill's testimony alone. Thus the fact that nothing was found on Cooper is significant only because stolen goods were found on the other two. It does not weaken the evidence placing Cooper at the scene of the robbery, even if it could mean, as Judges Edgerton and Bazelon suggest, that although present Cooper did not participate in the crime. However, that was for the 12 jurors, not for appellate judges to decide.

The government need not prove some "contractual" arrangement of robbers for division of the loot or prove that it was shared. It is suggested that Cooper if present was merely an innocent bystander, but reasonable jurors could reasonably conclude that his being in the company of the two on whom loot was found immediately before and after the attack and his entry into the house to tell Taylor "to come" was ample evidence to show his part in the crime. As I see it the trial judge was plainly correct in permitting the jury to draw the inference, if it chose, that Cooper's conduct was an indication of his involvement.

By itself Cooper's statement to Taylor that it was time to leave the house does not, of course, make him a participant. However, if the jury chose to believe Hill's testimony, as it could, then Cooper's urging Taylor to depart would support a finding of participation. At the least, reasonable jurors would be warranted in finding Cooper was an aider and abettor, for which mere presence is enough provided it is intended to and

does aid the primary actors. United States v. Garguilo, 310 F.2d 249 (2d Cir. 1962) (dictum).

The evidence offered by Cooper was not enough to negate the Government's evidence and certainly not enough to require a directed verdict of acquittal. This evidence was directed not at making a claim that, while present, he did not participate but at proving, by an alibi, that he was not at the scene of the crime at any time. His alibi witnesses, however, testified that Cooper walked them home and left them a few minutes before 9, which was in sharp conflict with the officer's testimony that Cooper had been booked at the precinct station by 8:45. These alibi witnesses also strengthened the Government's case by testimony that Cooper, Taylor, and Childs were indeed friends.

Judge Bazelon's complaint is that, considered as a whole, the charge was insufficient with respect to aiding and abetting. He does not dispute the accuracy of the aiding and abetting charge; rather he asserts it was plain error to give an identification instruction in the manner it was given. A careful examination of the charge convinces me that it was not only accurate to the point of being a model but that it was even favorable to Cooper.

Appellants based their defense on challenging Hill's identification of them as the attackers, thus not challenging the Government's case on any of the grounds now relied on for reversal.[1] Only Taylor's lawyers showed any interest in there being an aiding and abetting instruction; Cooper's counsel was interested in obtaining charges on lesser included offense, identification, and alibi, realizing, as he later stated candidly to the trial court, that "my case depends on identification."

The Trial Judge, however, gave an aiding and abetting instruction that was applicable to all three defendants; this was perhaps done in an abundance of caution. The evidence did not require this charge since the jury would have been warranted in inferring from the evidence that all three took direct roles in the robbery; aiding and abetting was not a necessary element of guilt. Nor was there evidence directed at or even indicating presence but noncomplicity; the absence of aiding and abetting was not, therefore, a theory of defense raised by the evidence and so required to be explained to the jury. See Womack v. United States, 119 U.S.App.D.C. 40, 336 F.2d 959 (1964).

Judges Edgerton and Bazelon agree with me that the charge on aiding and abetting as given was correct. To assess the impact of this charge in light of Judge Bazelon's claims, it is necessary to see it in full:

> * * * it is the law that if two or more persons act jointly or, as the law says, in concert, each performing a part or taking some step, and all the parts or steps taken together result in the commission of a crime, then all are equally guilty of the crime. So, too, if one person aids or abets, that is, assists, or helps another person in the commission of a crime, the person so aiding or abetting is guilty of the completed offense as though he had himself committed it entirely.

> Now, of course, in order that a person may be found guilty on the theory that he aided and abetted another in the commission of a crime or that he acted jointly with another, *he must have participated* to some extent in the commission of the crime, with the intention of so participating and with the knowledge of the crime that was about to be committed and in which he was participating. The degree of participation may be ever so small, *but there must*

---

1. Since the Trial Judge instructed fully on the elements of robbery, Byrd v. United States, 119 U.S.App.D.C. 360, 342 F.2d 939 (1965), holding that the elements of robbery must be spelled out even when the defense is directed at identification, is not applicable.

*be some active participation.* For example, *it is not sufficient to constitute aiding and abetting a crime* merely that a defendant *may have stood and watched the crime committed or that he knew* that it was being committed *and did nothing* about it. *He must have contributed to some extent* and in some way to the commission of the crime in order to be guilty on the theory that he aided and abetted it. [Emphasis supplied.]

It is hardly possible to state more clearly that mere presence at the scene of the crime could not by itself support a finding of guilty. In fact, in saying "there must be some active participation" to hold Cooper, the Trial Judge overstated the Government's burden and thus aided Cooper. That my colleagues admit the correctness of this charge renders it, I suggest, well nigh perfect.

After explaining the elements of robbery, the Trial Judge summarized the evidence and explained to the jury that "you have a right, *if you are convinced by this identification*, to find the defendants guilty, without any corroborating evidence," [emphasis supplied] but this cannot rationally be read independently of the detailed and meticulous instruction on "participation" just quoted. The Judge went on to explain that there was evidence corroborating the identification of Taylor and Childs. After stating explicitly that there was no corroborating evidence of identification as to Cooper, he told the jury it had

"  *   *   * a right to find Cooper guilty. On the other hand you may ask yourself whether the identification is sufficiently convincing in view of the fact that Hill had seen Cooper but for a fleeting moment that evening and that there may be a possibility of error in the identification."

Cooper could not have asked for more and indeed did not. In the first place there was ample corroborating evidence of the identification of Cooper. The fact that two of the three men Hill identified as the assailants had the stolen property in hand when arrested strengthens identification of Cooper as the third man. Second, the Trial Judge was singling Cooper out for special cautionary instructions on identification—which Cooper's counsel said was "his case"—despite the fact that the charge had already carefully conditioned conviction of the three defendants on acceptance of the identification.

Judge Bazelon, however, concludes that the admittedly accurate charge on aiding and abetting and the favorable charge on identification when considered together somehow undergo a mysterious transformation and emerge from the crucible as "plainly wrong." Two impeccable instructions add up to one wrong—and plain wrong to boot. Somehow the combination did not strike Cooper's counsel as error. It is Judge Bazelon's position by gyrations of rationalizing which utterly elude me, that the charge on identification operated so as to vitiate the aiding and abetting instruction and thus erroneously rendered identity the sole issue for the jury.

Even if the jury thought that identification was the only issue, I do not think this fact would represent error, since, as I have said, there was sufficient evidence to convict Cooper as a direct participant. I cannot accept, moreover, that the identification instruction had the effect ascribed to it by Judge Bazelon.

In charging a jury a Trial Judge cannot say two things at the same time. Since an accused is permitted inconsistent defenses, a charge must cover each and thus be, superficially, inconsistent. A trial judge cannot be required to state the applicable rules of law in a snowballing fashion, so that each succeeding proposition including the last contains all previous ones, in the hope that this will preclude the jury from interpreting the last one as overriding earlier ones. It is physically and logically impossible to instruct the jury on all the rules of law at the same time. Indeed it defies common human experience and common sense

to ask for it, as the majority now seem to be doing.

The judge can direct the attention of the jury to only one element of the case at a time; but this does not mean that the effect of a charge is to be judged by isolating one or more parts out of context. The aiding and abetting charge may indeed seem like "boilerplate" to appellate judges and make a less deep impression on them because of familiarity than charges which are made to relate specifically to the particular case being tried and so have an aspect of novelty which catches our eye. However, in the courtroom a jury hears the entire charge and hears the component instructions in relation to the whole and all parts are equally novel to lay jurors.

The Trial Judge could conceivably have put the aiding and abetting charge closer to the one on identification; but only four pages in the transcript separate the two parts. Is an appellate court to require closer proximity of what on review seems to it the main points in a trial? One of these points was not even argued to the jury. Our present system of defense for indigents almost invariably places a new lawyer in the case on appeal with the result that the central points of defense at trial frequently are not the central points on appeal.

It is especially significant that the trial judge ended the charge with the feature of the case most favorable to Cooper, i. e., the "fleeting" look Hill had of Cooper.

United States v. Garguilo, 310 F.2d 249 (2d Cir. 1962), provides no support for Judge Bazelon's position. There the initial correct charge on aiding and abetting was held to have been vitiated by later errors on the *same* subject; it is not a case of claiming that two correct charges on different matters conflicted, as Judge Bazelon contends in the instant case. In *Garguilo*, furthermore, the jurors were at no time "told in plain words that mere presence and guilty knowledge * * * would not suffice * * *," *id.* at 254, as the jury was explicitly told here.

I find no error, then, either in permitting Cooper's case to go to the jury or in the content of the charge, which was never objected to at trial or challenged by Cooper in this court on the theory relied upon by Judge Bazelon to find plain error.

All crimes are not committed with the built-in convenience of eye witnesses, few are photographed, and a man struck down from behind may indeed have some difficulty stating which of several assailants felled him. It is because of this that centuries of experience have led the Common Law systems of justice to the wise course of permitting 12 lay jurors, rather than appellate judges, to draw inferences from facts and circumstances in evidence and reconcile conflicts in the evidence.

In this case the majority is exercising fact-finding functions reserved to the jury and, among other things, reversing the District Judge for failing to say precisely what the record shows he did say to the jury. The other ground relied on for reversal represents another manifestation of this Court's tendency to require not merely a fair trial but a perfect trial. A fair trial is sufficient. Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953).