**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Clarence Earl JONES,
Defendant-Appellant.**

No. 78–2267.

United States Court of Appeals,
Ninth Circuit.

Jan. 29, 1979.

Rehearing Denied March 26, 1979.

Michael Tryon, Phoenix, Ariz., for defendant-appellant.

Gary V. Scales, Asst. U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before DUNIWAY and CHOY, Circuit Judges, and EAST,* District Judge.

CHOY, Circuit Judge:

Defendant Jones appeals from his conviction for aiding and abetting the robbery of

* The Honorable William G. East, Senior U.S. District Judge for the District of Oregon, sitting by designation.

a bank with a dangerous weapon. We reverse in part, vacate in part, and remand.

## I. *Statement of the Case*

On January 23, 1978, a lone gunman entered an Arizona bank, pointed what appeared to be a gun at a teller, and demanded that she put money on the bank counter. He took the money and fled to a waiting car. In May, a federal grand jury indicted Jones on a two-count indictment. He was charged with aiding and abetting the robbery of a bank in violation of 18 U.S.C. §§ 2113(a) and 2,[1] and also with aiding and abetting the use of a dangerous weapon in committing the robbery, in violation of 18 U.S.C. §§ 2113(d) and 2.[2] Jones' co-defendant pleaded guilty prior to trial. A jury found Jones guilty on both counts.

Because this appeal largely concerns the sufficiency of the evidence,[3] an extended discussion of the evidence offered at trial is appropriate. Various bank employees testified for the Government that a lone gunman, whom they identified as Jones' co-defendant, had robbed the bank. Other witnesses identified the "get-away" car as one Jones had borrowed from a friend, Blake, before the robbery. Jones' fingerprints were also found on the vehicle. Blake testified that defendant had warned him after the robbery that he should say that he had never seen the car and knew nothing about it if the police asked him. Blake's common law wife testified that Jones had told her to tell her husband that someone had stolen the car and used it to rob a bank and that Blake and she should tell the police that they had never seen the car and knew nothing about it.

The defense evidence sought to establish an alibi for the morning in which the robbery took place. A supervisor of the traffic court testified that Jones was with him at court during part of the morning of January 23, using an assumed name. A friend of Jones testified that he had gone to traffic court with Jones but had left Jones there.

Another defense witness testified that he had seen a car fitting the "get-away" car's description speed by him on the morning of the robbery. He testified that the driver "appeared to be a light-shaded dark dark brown" and appeared to be a Mexican.[4]

Jones' co-defendant next took the stand. In a somewhat confused manner, he testified that Jones was not the driver of the "get-away" car, though he refused to identify the driver. Finally, Jones took the

---

**1.** Section 2113 reads in part:
(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . .

. . . . .

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.
Section 2 provides:
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**2.** Section 2113(d) provides:
Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

**3.** *See* Part II *infra.*

**4.** The witness's testimony on this point was as follows:
A. . . . The driver at first appeared to be possibly a Mexican, male, with a large bushy hairdo . . . .. It appeared to be very curly. . . .
Q. Was the driver black?
A. I can't swear that he was black. I can't swear he was Mexican. He appeared to be a light-shaded dark dark brown.
Q. Did he appear to be Mexican rather than black?
A. At that time, I would say—I would have. said yes, he is Mexican, or appeared to be. And I still stand on that. That's what I saw.
The record indicates that Jones is black.

stand in his own defense. Jones denied robbing the bank or telling Blake and his wife that they should lie about their knowledge of the car. He also testified that the "get-away" car had been stolen from him but that he had not reported it to the police. He also supported his traffic court alibi.

The Government then introduced rebuttal testimony. One witness testified that the co-defendant had made a statement to him inculpating Jones in the robbery.[5] Other rebuttal witnesses disagreed on when Jones had been at traffic court, with court records indicating that Jones had been there in the afternoon of the robbery.

Jones made a number of motions which were denied, including a motion for acquittal.[6]

## II. *Sufficiency of the Evidence*

Jones argues first that the evidence was insufficient for the jury to find him guilty of violating §§ 2 and 2113(a) and (d) and therefore the district court should have directed an acquittal.

Jones acknowledges that in reviewing the jury's verdict for sufficiency of the evidence, this court must view the evidence in the light most favorable to the Government. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Robinson,* 546 F.2d 309, 314 (9th Cir. 1976), *cert. denied,* 430 U.S. 918, 97 S.Ct. 1333, 51 L.Ed.2d 597 (1977); *United States v. Nelson,* 419 F.2d 1237, 1241 (9th Cir. 1969). We may take into account the evidence presented by the defendant in his own behalf. *United States v. Figueroa-Paz,* 468 F.2d 1055, 1058 (9th Cir. 1972). We must affirm the jury's verdict if "the evidence, considered most favorably to the government, was such as to permit a rational conclusion by the jury that the accused was guilty beyond a reasonable doubt." *Nelson,* 419 F.2d at 1242; *see United States v. Kaplan,* 554 F.2d 958, 963 (9th Cir.), *cert. denied,* 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977); *Robinson,* 546 F.2d at 314.

Jones notes that "[i]n order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949). Although the Government relied on circumstantial evidence to show that Jones drove the "getaway" car, we believe the evidence was sufficient "to permit a rational conclusion by the jury that the accused was guilty beyond a reasonable doubt" of aiding the robbery in violation of §§ 2113(a) and 2. *See Nelson,* 419 F.2d at 1242.

The Government presented evidence from which a reasonable jury could find that Jones had borrowed the "get-away" car, that his fingerprints were on the car, and that he could not convincingly account for his time during the robbery and inexplicably knew about the robbery. The jury could have also found that Jones made statements to Blake and his wife which indicated Jones' recognition of his guilt. Although we do not suggest that a jury could reach no other reasonable result, we think the Government's circumstantial evidence was sufficient to support a reasonable jury's conclusion that he aided the robbery. *See United States v. Brady,* 579 F.2d 1121, 1127 (9th Cir. 1978) ("circumstantial evidence can be used to prove any fact"); *United States v. Ramirez-Rodriquez,* 552 F.2d 883, 884 (9th Cir. 1977) (same); *United States v. O'Looney,* 544 F.2d 385, 391 (9th Cir.), *cert. denied,* 429 U.S. 1023, 97 S.Ct. 642, 50 L.Ed.2d 625 (1976) (same).

The Government also claimed that Jones aided and abetted a violation of § 2113(d), which provides for greater penalties if a bank is robbed by one who "assaults any person, or puts in jeopardy the life of any person, by the use of a dangerous weapon

---

5. *See* Part III *infra.*

6. For a discussion of Jones' motion for a mistrial because of a lack of immediate cautionary instruction, see Part III *infra.*

or device . . .." [7] We do not believe that there was sufficient evidence to sustain this count.

In *United States v. Short,* 493 F.2d 1170 (9th Cir.), *modified,* 500 F.2d 676 (9th Cir.), *cert. denied,* 419 U.S. 1000, 95 S.Ct. 317, 42 L.Ed.2d 275 (1974), defendant, allegedly the "get-away" driver in a bank robbery, was indicted under § 2113(a) and (d). In disapproving a jury instruction, this court indicated that an essential element of a § 2113(d) charge, which must be proved by the Government, is that the alleged aider and abettor "knew that [his accomplice] was armed and intended to use the weapon, and intended to aid him in that respect." *Id.* at 1172.

In the instant case the prosecution did not present either direct or circumstantial evidence reasonably showing that Jones had the requisite knowledge and intent. We therefore reverse the judgment on the § 2113(d) charge. Because we are reversing the § 2113(d) portion of the judgment for lack of sufficient evidence to sustain it, there can be no retrial under the § 2113(d) part of the charge. Retrial is barred by the double jeopardy clause of the Constitution, Amendment V. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Although there was sufficient evidence on the § 2113(a) charge and Jones' other claims of error on the § 2113(a) charge are rejected *infra,* we vacate the judgment on the § 2113(a) charge because "there is but one offense, namely, bank robbery, that is charged." *United States v. Short,* 500 F.2d 676, 677 (9th Cir.), *cert. denied,* 419 U.S. 1000, 95 S.Ct. 317, 42 L.Ed.2d 275 (1974). On remand, the court may sentence Jones under § 2113(a).

### III. *Delay in Cautionary Instruction*

■ Jones claims that he was denied a fair trial because the district court did not immediately offer a cautionary instruction when it admitted in evidence, for impeachment, a prior inconsistent statement by Jones' alleged accomplice. After the alleged accomplice, White, testified for the defense, the Government called an FBI agent as a rebuttal witness and the following discussion took place:

A. Yes. During the interview, I asked Mr. White if his accomplice was Clarence Earl Jones, and he said he didn't want to specify who his accomplice was.

Later on, during the interview, I asked White if the green Chevrolet [the "get-away" car] belonged to Clarence Earl Jones, and he said that "No, he was not driving his own car. I don't think that was his car."

Q. Did you have any further conversation about the accomplice?

A. Yes, I did, later on. I then asked him if he had any other accomplices besides Jones, and he said, "No, we didn't have to look no further."

The morning following this rebuttal testimony, Jones made a motion for a mistrial which was denied. The trial judge at that time gave a cautionary instruction to the jury that the FBI agent's testimony was for impeachment purposes only.

Jones claims that our decision in *United States v. Ragghianti,* 560 F.2d 1376 (9th Cir. 1977), requires reversal because the district judge did not give an instruction when the evidence was introduced. There defendant was accused of having been a "get-away" driver in violation of § 2113(a). Defendant sought to establish an alibi and this court reversed because the district court failed to give an appropriate alibi instruction. We also noted that the district court improperly admitted "hearsay evidence of prior inconsistent statements of a witness . . . . without the protection of an admonition or instruction from the court to the effect that the statements could be considered only as bearing on credibility." *Id.* at 1379. In the instant case, however, the district court issued a cautionary instruction immediately after the defendant's counsel brought this problem to his attention. As the district judge noted at the time Jones presented his mistrial motion:

---

7. For the full text of subsection (d), see note 2 *supra.*

That is incredible you should say that. Do you know why? Because all you have to do is, if [your] rule of law is ever upheld, all any lawyer has to do is whenever he knows he should make an objection, he doesn't make it, and at the conclusion of the trial he can put them all together and move for a mistrial on the ground the judge erred because he let evidence in to which the attorney didn't object. You made no objection. I wondered at the time. I was perfectly willing to give a limiting instruction. I think you are entitled to it.

If you want me to give one now, I will, but you can't sit back and at a later date, when it pleases you, bring me a case [*Ragghianti*] saying that there is an error and that you want mistrial because you failed to make an objection at the appropriate time.   .   .   .

.   .   .   .

And what is it precisely you want me to tell them, so that we will be sure that you won't make another motion for another mistrial because I improperly instructed them?

The instant case is far different from *Ragghianti* where no cautionary instruction was ever given. We believe that the district judge here acted properly by giving an instruction immediately after defense counsel raised his objection. *See Isaac v. United States,* 431 F.2d 11, 15 (9th Cir. 1970) (instruction that prior inconsistent statement could be considered as substantive evidence not of constitutional dimension and not reversible error since substantial rights not affected).[8]

### IV. Prosecutorial Misstatements

Jones argues that his conviction should be reversed because the prosecutor in his opening statement referred to evidence which was never introduced and misrepresented evidence actually introduced. For example, Jones notes that the prosecutor stated that "this defendant stayed outside the bank and drove a truck," while the evidence established that the "get-away" vehicle was a car. Also, the prosecutor referred to the expected identification testimony of a Mr. Valentine, even though the prosecutor never called Mr. Valentine to the stand because of his psychological disorders.

Jones acknowledges that because he did not object to the opening statement, this court may reverse only if there is plain error. *See United States v. Cornfeld,* 563 F.2d 967, 970 (9th Cir. 1977), *cert. denied,* 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978); *United States v. Perez,* 491 F.2d 167, 173 (9th Cir.), *cert. denied,* 419 U.S. 858, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974); *United States v. Memoli,* 449 F.2d 160, 160 (9th Cir. 1971), *cert. denied,* 405 U.S. 928, 92 S.Ct. 979, 30 L.Ed.2d 801 (1972). But Jones adds that the errors were so prejudicial that they constituted constitutional errors and thus plain errors.

We disagree that the prosecutor's statements constituted reversible error in either the constitutional or nonconstitutional sense. A prosecutor's misstatement of the evidence does not automatically call for reversal. Instead, the court will reverse only if there is a serious possibility of prejudice to the defendant. *See Frazier v. Cupp,* 394 U.S. 731, 736, 89 S.Ct. 1420, 22 L.Ed.2d

---

**8.** Jones refers to the *Ragghianti* court's quoting of a statement from *Bartley v. United States,* 115 U.S.App.D.C. 316, 318, 319 F.2d 717, 719 (1963). This court wrote: "[I]t has been held that proper implementation of the rule requires 'an explicit admonition to the jury by the court *at the time* a prior inconsistent statement is admitted, and also an instruction at the close of the trial, that the statement may be considered only as bearing on credibility.'" 560 F.2d at 1381 (emphasis added). Citing the emphasized portion, Jones argues that this court has required the admonition at the time the evidence is introduced regardless of whether an objec-

tion is made. This court, however, referred to that statement to support the proposition that there is a subtle difference between admission of a prior inconsistent statement for impeaching and for substantive evidence in a case in which no cautionary instruction was ever given. Moreover, in *Bartley,* the District of Columbia Circuit was addressing the meaning of a District of Columbia statute. Finally, the District of Columbia Circuit found "substantial danger to the [defendant]" because no instruction had been given, while here the district judge warned the jury immediately after the defendant's counsel raised his objection.

684 (1969); *United States v. Mikka*, 586 F.2d 152, 155 (9th Cir. 1978), appeal pending, —— U.S. ——, 99 S.Ct. 1247, 59 L.Ed.2d 474; *United States v. Rich*, 580 F.2d 929, 936 (9th Cir. 1978); *United States v. Hood*, 493 F.2d 677, 682 (9th Cir.), *cert. denied*, 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 84 (1974); *Perez*, 491 F.2d at 173; *Memoli*, 449 F.2d at 160.[9]

■■■ In the instant case we cannot find a serious danger of prejudice to Jones. Both the court and the prosecutor warned the jury that the prosecutor's statements were not evidence; we have noted repeatedly that cautionary instructions can help neutralize the possible prejudicial effects of prosecutorial misstatements. *See Mikka*, 586 F.2d at 155–56; *Rich*, 580 F.2d at 936; *Hood*, 493 F.2d at 682. Moreover, the prosecutor did not later rely on the misstatements. Finally, the Government's inability to produce evidence which it promised the jury would appear to harm the Government's case rather than the defense.[10] We conclude that under the circumstances, the prosecutor's misstatements did not significantly prejudice defendant so as to constitute plain error, much less con-

---

**9.** Jones refers to *Maricopa v. Maberry*, 555 F.2d 207 (9th Cir. 1977). That was a civil case in which one party's counsel asked an expert witness a question that was highly prejudicial to the other side, unethical under the Code of Professional Responsibility, and clearly improper. We concluded that a new trial was required "because . . . the non-medical question propounded to the expert medical witness was an intentional act, done with the sole purpose of bringing to the jury something it should not have heard. The question was grossly improper, highly devastating to the defense, carefully planned, and was an attempt to place an alleged *opinion* as to a legal matter by a non-legal expert . . . before the jury." *Id.* at 219. Here, however, Jones has not claimed that the prosecutor intentionally lied about the forthcoming evidence. Rather, it appears that the prosecutor in good faith presented in his opening what he thought the evidence would later be. In the instance of Mr. Valentine's not testifying, for example, the prosecutor later informed the court that he had decided not to call Mr. Valentine because of his mental condition.

Jones also refers to *Jones v. United States*, 119 U.S.App.D.C. 213, 338 F.2d 553 (1964). There the prosecutor foreshadowed the testimony of the Government's one and only witness. Later when the witness did not testify as the prosecutor had predicted, she repeatedly asked leading questions which incorporated the response she wished. The District of Columbia Circuit determined that the repeated misleading of the jury on a key point was especially critical given the lack of other evidence for the Government. Because of the misleading opening statement, reinforced by the misleading questions, as well as other improper tactics the prosecutor employed in impeaching the defense witnesses, the D. C. Circuit ordered a new trial. *Id.*, at 214–15, 338 F.2d at 554–55 & n.4. In the instant case Jones has not alleged such pervasive improprieties. And instead of the prosecutor's trying to capitalize on the misstatements in the opening statement, the prosecutor here

joined the trial judge in warning the jury that his words were not evidence and did not later rely on the incorrect predictions of testimony.

Finally, Jones refers to *Leonard v. United States*, 277 F.2d 834 (9th Cir. 1960). In his opening statement there, the prosecutor told the jury that the defendant had committed 83 felonies on other occasions not the subject of the pending prosecution. Throughout the trial the list of 83 crimes was on a blackboard visible to the jury. The trial judge later told the jury that he had ruled that the prosecutor could not discuss those crimes. Noting that the judge had not instructed the jury to disregard the presentation of the 83 crimes, that the blackboard remained visible throughout the trial, and that the prosecutor had not satisfied his obligation to represent the interests of society fairly, we held that a new trial was required.

We reiterate that in the instant case there was no claim of such pervasive, repeated, and perhaps intentional misinforming of the jury. Moreover, the trial judge and the prosecutor told the jury that the opening statement was not evidence but only a prediction of what the evidence would be.

**10.** In his reply brief, Jones argues:

> Since Mr. Valentine did not testify, the jury could only speculate that he was prevented from testifying by a defense ploy.

We find nothing in the record that would indicate that the prosecution sought to create such speculation or that would support such speculation. We think instead that "any effect upon the jury . . . may well have been prejudicial to the prosecution because of the logical implication that the 'eye-witness' either was non-existent or, if called, would not have helped the case of the prosecution." *Virgin Islands v. Rivera Solis*, 359 F.2d 518, 520 (3d Cir. 1966); *see United States v. Akin*, 562 F.2d 459, 466 (7th Cir. 1977), *cert. denied*, 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed.2d 531 (1978); *United States v. Smith*, 253 F.2d 95, 98 (7th Cir.), *cert. denied*, 357 U.S. 919, 78 S.Ct. 1360, 2 L.Ed.2d 1364 (1958).

stitutional error. *See Frazier,* 394 U.S. at 733–37, 89 S.Ct. 1420; *Hood,* 493 F.2d at 682; *Perez,* 491 F.2d at 173–74; *Memoli,* 449 F.2d at 160.

REVERSED in part, VACATED in part, and REMANDED.