Johnny L. BARKER, Appellant,

v.

UNITED STATES, Appellee.

Eddie L. CALLAHAM, Appellants,

v.

UNITED STATES, Appellee.

Nos. 10098, 10103.

District of Columbia Court of Appeals.

Argued Sept. 27, 1976.

Decided May 25, 1977.

Rehearing and Rehearing En Banc
Denied Aug. 5, 1977.

Walter C. Wallace, Washington, D.C., appointed by this court, for appellant Barker.

Joel M. Hamme, Washington, D.C., appointed by this court, with whom Dean Burch, Washington, D.C., appointed by this court, was on the brief, for appellant Callaham.

Daniel A. DeRose, Asst. U.S. Atty., Washington, D.C. with whom Earl J. Silbert, U.S. Atty., John A. Terry, William D. Pease and Michael G. Scheininger, Asst. U.S. Attys., Washington, D.C. were on the brief, for appellee.

Before KERN, GALLAGHER and MACK, Associate Judges.

KERN, Associate Judge.

The first count of the three-count indictment in this case charged that both appellants assaulted a Mr. Fluellyn with a dangerous weapon, viz., a pistol,[1] and counts two and three charged each appellant, respectively, with possession of a pistol without a license.[2] All three counts of the indictment rested upon an incident occurring on May 30, 1975.

The government presented evidence at trial that Fluellyn and appellant Barker engaged in a fistfight around 8 p. m. in front of the dwelling in which they both lived. Others intervened and terminated the struggle, both appellants left in Callaham's car and by the time police arrived the situation was peaceful. Some hours passed and appellants returned in Callaham's auto. Fluellyn then appeared and stood by the passenger side of the car brandishing a knife, according to the defense testimony, and began arguing with Barker. Callaham got out of the driver's seat, pointed a pistol at Fluellyn's head and directed him to "get

off my car, before I blow your brains out." When the complainant stepped back, Callaham reentered his auto and handed the pistol to Barker who was seated in the front passenger seat.[3] Barker then fired four or five shots at Fluellyn, wounding him, and the car drove off.

The trial court in its final charge instructed the jury, among other things, on the elements which comprise the crime of assault with a dangerous weapon and that it could find either or both appellants guilty of such crime if the government had carried its burden of proof. The judge also charged the jury that it might find appellant Callaham guilty of the lesser-included offense of simple assault if the government proved beyond a reasonable doubt the elements of that crime. Also, the court gave an aider and abettor instruction to the jury concerning appellant Callaham's assistance to his codefendant Barker in shooting Fluellyn.

The major contention[4] of appellant Callaham is that the trial court by its charge, and the prosecutor by the evidence he presented at trial, in effect amended the indictment returned by the grand jury. Alternatively, he argues that there was a variance between the indictment and proof to the prejudice of his case. The constructive amendment argument is that he was "charged with a single count of assault with a dangerous weapon . . . [yet convicted] where the prosecution's evidence revealed two separate assaultive acts—one in which appellant acted as a principal [threatening Fluellyn with the pistol] and the other in which he acted as an aider and abettor

1. D.C.Code 1973, § 22–502.

2. D.C.Code 1973, § 22–3204.

3. Members of the Barker family were seated in the rear of the car.

4. We find no merit in appellant Callaham's other assertions of error. Given the evidence adduced concerning Callaham's *actions* during the confrontation with Fluellyn, we cannot say the "mere presence" instruction to the jury was error. Nor do we find merit in the contention that the evidence required the trial court to charge the jury on what Callaham argues was

his "right to use reasonable force to prevent interference with his property and freedom of movement." Similarly, we cannot say upon review of this record that the defense counsel's representation of Callaham was so incompetent as to "blot out any substantial defense" at trial. *Cooper v. United States*, D.C.App., 248 A.2d 826, 827 (1969). Finally, the trial court's imposition of a condition of restitution as part of the sentence of Callaham was not contrary to the statute or an abuse of its sentencing discretion. *Cf.* D.C.Code 1973, § 16–710.

[passing the pistol to Barker who immediately shot Fluellyn] . . . and where the trial judge charged the jury in accordance with this evidence." (Emphasis added.)

The federal court of appeals here in *Gaither v. United States*, 134 U.S.App. D.C. 154, 164–65, 413 F.2d 1061, 1071–72 (1969), describes the principles applicable to Callaham's contention:

The courts have recognized two kinds of erroneous departure from the original indictment of a grand jury, each with its own standards governing prejudice. An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.

An amendment is thought to be bad because it deprives the defendant of his right to be tried upon the charge in the indictment as found by the grand jury and hence subjected to its popular scrutiny. A variance is thought to be bad because it may deprive the defendant of notice of the details of the charge against him and protection against reprosecution. [Footnotes omitted; emphasis in original.]

The Third Circuit Court of Appeals in *United States v. Somers*, 496 F.2d 723, *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974), has pointed out that a defendant need make no showing of prejudice to obtain reversal in the case of an amendment, whereas prejudice is required to be shown if he urges reversal on the ground of variance:

In *Ex Parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1886), the Supreme Court held that the striking of terms in an indictment by a trial court denied defendants (felons) their constitutionally protected right to be tried only upon charges returned by a grand jury. Since a grand jury might base its indictment upon terms stricken by a trial judge, the Supreme Court established a *per se* rule against judicial amendments to the terms of an indictment.

A less rigid stand has been taken with respect to *variances* between the terms in an indictment and the evidence established at trial. Rather than adopt a *per se* rule, the Supreme Court has developed a case-by-case approach for analysis of variances. In both *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), and *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), the Supreme Court announced that variances would constitute reversible error only in those cases in which variances actually prejudice the defendant. [*Id.* at 743–44; emphasis in original; footnotes omitted.]

Our task then is first to determine whether the judge and the prosecutor amended the indictment against Callaham. Appellant does not claim that the indictment was physically altered by adding or deleting terms; rather, he asserts that the indictment was *constructively* amended by the prosecution when it presented evidence that appellant committed two assaultive acts, *viz.*, pistol-waving and pistol-passing, and when the trial court then instructed the jury that appellant could be found guilty of assault with a dangerous weapon as a principal *or* as an aider and abettor.

*Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), is the Supreme Court's leading pronouncement on the doctrine of "constructive" amendment by a court and/or prosecutor during trial. In *Stirone*, the defendant was charged with a violation of the Hobbs Act, 18 U.S.C. § 1951 (1970), an offense having two essential elements: (a) interference with commerce and (b) extortion. The grand jury charged Stirone with extortion which affected interstate transportation of sand to construct a steel mill in Pennsylvania. At trial, however, the government presented evidence that the defendant had *also* interfered with the interstate transportation of

steel because of his efforts to impede the construction of the mill. The trial court instructed the jury that defendant could be convicted for *either* offense. The Supreme Court reversed the conviction *without inquiring into prejudice* because "we cannot know whether the grand jury would have included in the indictment a charge that commerce in steel from a non-existent steel mill had been interfered with." 361 U.S. at 219, 80 S.Ct. at 274. The prosecutor, by adding during trial this separate offense based on facts adduced at trial, was deemed by the Court to have "constructively" amended the indictment and thereby presented a "substantial likelihood that Stirone may have been convicted of an offense other than that charged by the grand jury." *United States v. Somers, supra* at 744. In sum, when the prosecution and the trial court alter the elements of the offense the grand jury has charged, then an amendment of the indictment is deemed to have occurred. *See Jackson v. United States,* 123 U.S.App.D.C. 276, 279, 359 F.2d 260, 263 (1966).

■ We are not persuaded that the proof presented in the instant case and the trial court's instructions in its charge raised the "substantial likelihood" that appellant may have been convicted of a crime different from that charged by the grand jury so as to constitute a constructive amendment to the indictment. In our view the prosecution was not attempting to prove a *different* offense than was charged in the indictment against Callaham when it presented the government's case. Unlike *Stirone,* the government here was attempting to prove that Callaham had committed an assault with a dangerous weapon which was the charge returned in the indictment. Proof of its case necessarily required presentation

to the jury of all that happened in the several minutes between the arrival of appellants in the auto and the wounding of Fluellyn. Since D.C.Code 1973, § 22–105 makes no distinction between one who acts as a principal and one who merely assists the commission of a crime as an aider and abettor, the trial court was obliged to instruct the jury that Callaham could be found guilty of assault with a dangerous weapon *either* as a principal *or* as an aider and abettor. This charge did not add a *new* or *different* offense to the indictment and did not rest the conviction on a different set of facts than the grand jury had considered before returning the indictment.

■ We turn now to determining whether a variance was created at trial by the government's proof. The federal court of appeals for the Eighth Circuit in *Nassif v. United States,* 370 F.2d 147, 155 (1966) held "[a]n aider and abettor may be indicted *directly* with the commission of the substantive crime and the charge may be supported by proof that he *only* aided and abetted in its commission." (Emphasis added.) *See United States v. DiPrima,* 472 F.2d 550 (1st Cir. 1973). Thus, if a defendant is charged in the indictment as a principal and the evidence at trial shows him to be an aider and abettor, there is *no* variance. A variance would be created if the prosecutor's proof at trial was based on a different set of factual circumstances than was presented to the grand jury at the time of the indictment. *Jackson v. United States, supra.* Since that did not occur here, we hold that it was permissible for the government to introduce evidence of the entire incident and the trial judge's instructions to the jury were correct.[5] *See Carter v. State,* Ind.App., 353 N.E.2d 495 (1976).

---

5. Callaham argues as well that the indictment was duplicitous in that it charged in one count two otherwise joinable offenses. *See* 8 J. Moore, Federal Practice and Procedure ¶ 8.04[2] (1976). He asserts that the duplicity did not become apparent until the government offered proof at trial that Callaham first waved the pistol at Fluellyn and then immediately thereafter passed it to Barker who shot Fluellyn. This argument, however, misconstrues the definition of a duplicitous indictment. An indictment is duplicitous if two otherwise joinable offenses are *actually* contained in a single count of the indictment. Here, there was only one charge of assault made in the indictment, and although the government's evidence disclosed assault based on two separate theories, Callaham could be convicted and sentenced for only one assault.

■ We take up now appellant Barker's contentions which are in essence that (1) the prosecutor in effect suppressed an eyewitness' pretrial written statement by withholding its delivery to the defense until the trial was in progress, so as to violate due process, *see Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and (2) the joinder of the three counts constituted a misjoinder. The joinder of the counts was entirely proper since each count was directed to a different facet of one continuous occurrence and thus constituted a series of acts within the meaning of Super.Ct.Cr.R. 8(a).[6]

■ As to the asserted *Brady* violation, the record reflects that a Mr. George Jordan gave a written statement to the police in question and answer form; and, in the statement, Jordan described how Fluellyn stood by the car and "started flashing the knife in Johnny Lee's [Barker] face." The record further reflects, however, that later the witness testified he could *not* recall stating to the police that Fluellyn had a knife. He explained at trial when taxed with this statement by defense counsel, that although he had signed it, he "just glanced over it [and] . . . didn't read it." Since the prosecution did in fact give counsel the statement before the defense presented its case there does not appear to be a *Brady* violation, and in any event, we can discern no prejudice to appellant Barker now requiring reversal.

*Affirmed.*

**6.** Appellant Barker appears also to argue that joining both appellants in the first count charging them with assault with a dangerous weapon prejudiced him because the evidence presented at their *joint* trial *concerning Callaham* "rubbed off" on Barker to his prejudice. Given the evidence that Barker did the shooting, this argument is absolutely without merit.