**Terrence L. INGRAM, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 88-1345.**

District of Columbia Court of Appeals.

Argued Jan. 22, 1991.

Decided June 5, 1991.

As Amended June 21, 1991.

---

**994**

were on the brief, Washington, D.C., for appellee.

Before ROGERS, Chief Judge, FERREN, Associate Judge, and BELSON, Associate Judge, Retired.*

FERREN, Associate Judge:

An indictment jointly charged appellant Ingram and codefendant Morgan with offenses attributable to the armed robbery of a Georgetown video arcade on May 9, 1988. After a jury trial in August 1989, appellant was convicted of armed robbery, D.C.Code §§ 22–2901, –3202 (1989), and was sentenced to prison for fifteen years to life. On appeal, he argues (1) the trial judge committed reversible error in failing to sever the defendants' trials because their defenses were irreconcilable and there was a danger the jury would unjustifiably infer from this conflict alone that appellant was guilty; (2) the jury instructions on armed robbery improperly permitted conviction for aiding and abetting the armed offense even if the jury believed appellant was only aware of an unarmed robbery; and (3) appellant's constitutional right to a grand jury indictment was violated when the government altered its theory of aiding and abetting after both sides had rested. Finding no error, we affirm.

I.

According to the government's evidence, shortly after 10:00 a.m. on Monday, May 9, 1988, an armed man, later identified as Morgan, entered the back office of a video arcade moments before a Brinks armored truck was scheduled to collect the weekend proceeds. He asked, "Where is the money at?," and struck the manager four times on the head with a gun, drawing blood, before taking $4,500 in presorted bills. As Morgan was leaving, a customer gave chase and saw him get into the passenger side of a Volkswagen with Maryland tag "SES 299." Morgan was carrying a blue athletic bag. Another black male was driving the car.

Allen W. Levy, Public Defender Service, with whom James Klein and Page Kennedy, Public Defender Service, were on the brief, Washington, D.C., for appellant.

Elizabeth H. Danello, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Thomas J. Tourish, Jr., and David Schertler, Asst. U.S. Attys.,

---

* Judge Belson was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on June 1, 1991.

Police investigation led two Metropolitan Police Department detectives to the golf course where Morgan, the owner of the Volkswagen bearing Maryland tag "SES 299," was employed. Morgan had punched into work at 10:32 a.m., about four hours later than normal and about 20 minutes after the robbery. Morgan told the detectives that he had received a ride to work from a friend, Thomas Clark. Morgan was arrested.

As the detectives were driving Morgan to the police station around 3 p.m., they noticed a Volkswagen with Maryland tag "SES 299" approaching from the opposite direction. On seeing the car, Morgan lunged toward the window. The detectives (in an unmarked car) turned around, followed the Volkswagen to a nearby 7-11 store, and watched as appellant Ingram emerged from the driver's side.

As the police walked past the car, they noticed an empty pistol holster containing six bullets partially visible on the car floor. Appellant was immediately arrested and searched. The search revealed a badge identifying appellant as an employee of the video arcade robbed that morning. A search of the car's trunk produced a zipped blue cloth bag containing a loaded revolver and $700 in cash. The revolver—which had blood on it later found consistent with the blood type of the arcade's manager—was later identified as the robbery weapon. The money was identified as some of the money stolen from the arcade that morning. On the passenger seat underneath appellant's jacket was a deposit slip showing that appellant had deposited $1,700 in his credit union that day at 12:32 p.m. The money, some of which was retrieved from the credit union, was identified as proceeds from the robbery. The teller testified that appellant had deposited a packet containing 50 twenty dollar bills wrapped in a blue wrapper and 700 one dollar bills wrapped in yellow straps of one hundred bills apiece.

Thomas Clark, whom Morgan had implicated in the crime, testified as a government witness. He admitted he was a friend of Morgan and knew appellant, admitted he knew Morgan had named him as

the person who had driven him to work on May 9th, and admitted to being on parole until 1998. Clark testified, however, that he had been at home the morning of May 9th and had neither seen the codefendants nor driven Morgan's car that morning. Clark was impeached with a 1983 conviction for armed robbery. Clark's father supported his son's alibi.

Appellant testified and also denied any involvement in the robbery, explaining he had innocently driven the getaway car and had unknowingly come into possession of the robbery proceeds. He testified that he had stayed with his brother at his mother's home the morning of May 9th until Thomas Clark arrived to drop off Morgan's car at approximately 11:30 a.m. According to appellant, after Clark had driven Morgan to work, Clark drove to appellant's mother's home, where he handed appellant an envelope containing $1,700 (50 twenty dollar bills and 700 ones in wrappers), and said: "This is from Bobby [Morgan]." Appellant further testified that he was not surprised to see so much money in small denominations because he "had often seen Bobby with a lot of money in small bills" and the wrappers "were just regular money wrappers." Appellant then drove Clark in Morgan's car to the subway, drove to the credit union to meet his sister and to deposit the money, and drove to an auto parts shop to purchase parts for his own car.

Appellant explained he had approached Morgan, one of his best friends, for a loan in March and again in April to help him attend carpentry school in July because Morgan always had "a lot of money." Also, because his car was in the repair shop, appellant had asked Morgan if he could borrow Morgan's car to pick up repair parts. On the night before the robbery, Morgan phoned appellant while appellant was working at the arcade. He told appellant that he had the money ready for him and that appellant could borrow his car the next morning. Morgan promised to bring his car over as soon as he had taken his wife to the hospital on Monday morning. Although appellant admitted telling Morgan about his job at the arcade, he denied telling Morgan any specifics about where the money was kept or when the

armored car came to pick up deposits. Appellant was impeached by 1984 and 1985 convictions for theft, a 1984 conviction for malicious destruction of property, and a 1985 conviction for storehouse breaking and entering. Appellant's brother and sister, as well as an employee at the auto repair shop, testified in support of appellant's alibi defense. Appellant's defense was further corroborated when a detective found auto parts inside the Volkswagen's trunk when appellant was arrested.

Codefendant Morgan also testified. He denied any involvement in the robbery, denied lending appellant any money, denied discussing appellant's job with him, and denied sending Clark to appellant's mother's home with Morgan's car on the morning of the robbery. He argued misidentification and testified that the night before the robbery he had left his car at a subway station so that appellant could use it to pick up some auto parts. Morgan claimed Thomas Clark had driven him home from the subway in Morgan's second car. Morgan also explained that he had been late to work on Monday because he had had to take his wife to a hospital clinic (there were no records introduced in evidence showing that he or his wife had signed in), and that Clark had given him a ride to work that morning in Morgan's second car. Morgan admitted on direct examination that he had been convicted of armed robbery in 1982.

In closing argument, appellant's attorney argued that Morgan had robbed the arcade with Clark as the getaway driver and that Clark had taken a $2,000 cut while Morgan took a $2,500 share and gave $1,700 of it to appellant as a loan.

## II.

Appellant contends the trial court erred in denying his motions for severance based on the defendants' conflicting and irreconcilable defenses. Because appellant moved to sever before trial and three times during trial, we review for abuse of discretion. *See Garris v. United States*, 559 A.2d 323, 329 (D.C.1989).

■ When two defendants are charged with jointly committing a criminal offense, there is a strong presumption that they will be tried together. *See* Super.Ct. Crim.R. 8(b);[1] *Tillman v. United States*, 519 A.2d 166, 169 (D.C.1986). To avoid prejudice, however, properly joined defendants may request a severance at any time under Super.Ct.Crim.R. 14.[2] *Ready v. United States*, 445 A.2d 982, 985–86 (D.C. 1982), *cert. denied*, 460 U.S. 1025, 103 S.Ct. 1279, 75 L.Ed.2d 498 (1983).

■ Unfair prejudice does not arise merely because defendants are mutually hostile and attempt to blame each other. *See Sweet v. United States*, 438 A.2d 447, 451 (D.C.1981). Rather, severance is required only when a defendant shows that (1) a " 'clear and substantial contradiction between the respective defenses' caus[es] inherent irreconcilability between them," *Tillman*, 519 A.2d at 170 (citing *Williams v. United States*, 382 A.2d 1, 8 (D.C.1978)), and (2) that the irreconcilability creates "a danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *Rhone v. United States*, 125 U.S.App.D.C. 47, 48, 365 F.2d 980, 981 (1966). "Stated another way, the task of the court is in assessing *the risk* of the jury's being misled into finding guilt from the existence of the conflicting defenses alone." *Johnson v. United States*, 398 A.2d 354, 368 n. 11 (D.C.1979) (emphasis in original). The degree of such risk is mea-

1. Super.Ct.Crim.R. 8(b) provides:
   Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all the defendants need not be charged in each count.

2. Super.Ct.Crim.R. 14 provides in part:
   If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election of separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. . . .

sured by assessing the evidence offered against the defendant, independent of the conflicting evidence presented by the codefendant. *See Garris,* 559 A.2d at 329. The prejudice resulting from irreconcilable defenses is overcome if

> there would be available at trial enough independent evidence of appellant's guilt—*beyond that required for the government to survive a motion for judgment of acquittal*—so that the court reasonably could find, with substantial certainty, that the conflict in defenses alone would not sway the jury to find appellant guilty.

*Tillman,* 519 A.2d at 170 (quoting *Ready,* 445 A.2d at 987); *see also Reynolds v. United States,* 587 A.2d 1080, 1082 (D.C. 1991); *Garris,* 559 A.2d at 329–30. Applying these principles, we conclude that although appellant and Morgan did present irreconcilable defenses, the independent evidence of appellant's guilt was sufficient to dispel any prejudice.

As the government concedes, Morgan's testimony contradicted the crux of appellant's defense: appellant's explanation of why and how he had the money and Morgan's car. Appellant testified that he had innocently received the robbery proceeds as a loan from Morgan and had not been driving Morgan's car on the morning of the robbery. Morgan, however, denied lending money to appellant and claimed that he had sent his car to appellant the night before the robbery. These defenses are in "clear and substantial contradiction" and cannot be reconciled because it would be impossible for a jury to accept both defenses at the same time. *See Ready,* 445 A.2d at 986.

Nonetheless, the independent circumstantial evidence of appellant's participation in the armed robbery was "powerful," *Mitchell v. United States,* 569 A.2d 177, 182 (D.C.), *cert. denied,* —— U.S. ——, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990), and was more than sufficient to assure that the jury did not convict him on the basis of the conflicting testimony alone. Appellant was accused of aiding and abetting the armed robbery by driving the getaway car or planning the robbery or both.[3] Here, the evidence of appellant's role in the robbery—evidence independent of Morgan's testimony and admissible at a trial of appellant alone—showed: (1) appellant worked at the arcade that was robbed; (2) appellant testified that Morgan and he were close friends; (3) appellant knew that a Brinks truck came to the arcade on Monday mornings to pick up the weekend's proceeds; (4) when the robber came to the arcade's back office, he demanded, "Where is the money at?"; (5) a black male other than Morgan was driving the getaway car; (6) Thomas Clark denied any involvement in the robbery; (7) the night before the robbery, appellant and Morgan talked on the telephone while appellant was working at the arcade; (8) two hours after the robbery, appellant deposited $1,700 of the stolen money in his credit union account; (9) four hours after the robbery, appellant was driving the getaway car; (10) in the trunk of that car was a blue bag containing both the gun used in the robbery and proceeds of the robbery; and (11) an empty gun holster was visible on the floor of the car. Taken together, this evidence is compelling enough to go well beyond that required to survive a motion for judgment of acquittal. *See Lemon v. United States,* 564 A.2d 1368, 1372 (D.C. 1989); *Ready,* 445 A.2d at 987–88. The risk was minimal that the jury would improperly conclude on the basis of the conflicting defenses alone that both appellant and Morgan were guilty. *See Reynolds,* 587 A.2d at 1083.[4]

3. Under D.C.Code § 22–105 (1989), a defendant may be convicted as an aider and abettor if the evidence shows "that someone committed the offense charged and the defendant knowingly aided in its commission in some way." *Gillis v. United States,* 586 A.2d 726, 728 (D.C.1991).

4. Some of this evidence independent of Morgan's testimony would not have been available if appellant had elected not to testify. Appellant, however, does not argue that we should assume, for purposes of identifying and assessing the "independent evidence of guilt" under the *Garris–Tillman–Ready* standard, that he would not have testified at a separate trial. Nor could appellant persuasively make such an argument on this record because appellant—presumably through his own testimony—had to rebut the government's evidence of the gun and

Appellant tries to persuade us, however, that this independent evidence of his involvement in the crime is mostly innocuous. He also argues there is significance in the fact that all this evidence is circumstantial. He therefore urges us to conclude that far more substantial evidence is required than the government produced to offset the prejudice of conflicting defenses. According to appellant, by allowing the level of circumstantial evidence presented here to satisfy the test for denying severance, this court would be reading out of our jurisprudence all possibility for reversal for abuse of discretion under Rule 14 when codefendants present irreconcilable defenses.

Specifically, appellant cites *Mitchell* for the outside limit of denying severability when defenses are irreconcilable. There, we found "powerful" circumstantial evidence of defendant's guilt when his roommates saw him go into his bedroom with the victim and heard the victim scream, and neighbors later saw defendant leave his apartment holding his hand over the mouth of his struggling victim on the night of her alleged murder. *Mitchell*, 569 A.2d at 179. In every other case where we have affirmed a decision not to sever based on concededly irreconcilable defenses, the government's evidence has consisted of an eyewitness who positively identified the appellant as a participant in the crime.[5] Appellant accordingly argues that because the government did not offer an eyewitness who could place appellant near the scene of the crime, and because the mostly innocuous, circumstantial evidence against him

became compelling only after codefendant Morgan presented a conflicting defense, the trial court should have severed the two defendants' trials.

This court has never held that an eyewitness identification of one or all defendants is a prerequisite for a joint trial with irreconcilable defenses.[6] Nor are we prepared now to say that circumstantial evidence, standing alone, is insufficient as a matter of law to negate the prejudice from irreconcilable defenses. It is long settled that circumstantial evidence is not necessarily entitled to less weight, as such, than direct evidence. *See Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954); *Chaconas v. United States*, 326 A.2d 792, 797 (D.C.1974); Criminal Jury Instructions for the District of Columbia, No. 2.10 (3d ed. 1978). Our decision in *Mitchell*, as well as the evidence in the present case, makes clear why circumstantial evidence in itself can be enough, in some cases, to preserve a joint trial from a severance motion based on irreconcilable defenses.

Here, the government's circumstantial evidence against appellant was compelling in its own right. It placed appellant, an employee of the store robbed and a friend of the identified robber, in the getaway car and in possession of the robbery gun and proceeds within two hours of the crime. This evidence provided the jury with a substantial basis for sorting through the conflicting defenses and assessing witness credibility without making an unjustifiable inference of guilt from the conflicting de-

the proceeds of the robbery in the getaway car he was driving.

5. Appellant cites the following cases where an eyewitness identified the defendant: *Lemon*, 564 A.2d at 1372 (defendant was "identified by several witnesses, some of whom were previously acquainted with him and could hardly have misidentified him by accident"); *Garris*, 559 A.2d at 330 (victim's "positive identification of Garris as the perpetrator of the ... crimes, the corroborating testimony of [two witnesses], and Garris' flight ... supplied the independent evidence of Garris' guilt"); *Tillman*, 519 A.2d at 171 ("[t]he [eyewitness] testimony of the complainant ... without more would have provided the necessary independent evidence...."); *Ready v. United States*, 445 A.2d at 987 ("Given

that three government eyewitnesses identified appellant as the gunman ..., the court did not abuse its discretion in concluding that the jury would not infer guilt from the fact of the conflicting defenses alone").

6. In this case an eyewitness to the crime, the arcade manager, did testify. He positively identified Morgan as his assailant. The manager's testimony worked to dispel the risk that the defendants were convicted solely on the basis of their conflicting testimony. If anything, this eyewitness worked in appellant's favor, leading the jury to doubt Morgan's testimony—including his denial of the loan and explanation of how he lent the car to appellant on the night before the robbery.

fenses alone. *See Ready,* 445 A.2d at 986. As the trial court noted:

> I think considering ... [appellant's] possession of the vehicle used in the robbery coupled with his possession of the gun as far as it being in the trunk of the car and the proceeds from the robbery both in the car and those he deposited, that a reasonable juror could conclude it is highly unlikely that one of his good friends who was a good enough friend according to him to loan him $1700 and loan him his car would ironically end up at the exact same place that he works committing a robbery at the time that is most convenient to do it. I think the evidence is clearly there to suggest that he planned it.

Morgan's denial of the loan and his testimony about lending appellant the car the night before, not the day of, the robbery did not significantly strengthen the evidence against appellant. The jury did not need Morgan's testimony to infer that appellant either helped plan the robbery or drove the getaway car.

Nor did the jury need Morgan's testimony to reject appellant's alibi or loan defense, given the undisputed facts that appellant possessed the car and the robbery proceeds—in small denominations, banded in bank wrappers—shortly after the robbery. We note that it is an "inference of ancient vintage" for a jury to find a defendant guilty of robbery when that defendant exclusively possesses recently stolen property without satisfactorily explaining why. *See Head v. United States,* 451 A.2d 615, 625 (D.C.1982) (quoting *Pendergrast v. United States,* 135 U.S.App.D.C. 20, 31, 416 F.2d 776, 787, *cert. denied,* 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969)); Criminal Jury Instructions for the District of Columbia, No. 3.09 (3d ed. 1978).

Even if the jury believed appellant—that Morgan made him a loan and that Clark drove the getaway car to appellant's mother's house at 11:30 a.m.—the jury could still find that appellant had helped plan the robbery the night before. Appellant's and Morgan's defenses did not conflict on this point. Both testified they knew of appellant's job at the arcade and had talked on the telephone the night before the robbery while appellant was at the arcade. Both denied discussing the details of the Brinks truck pick-up with each other. Far from concluding guilt from the conflict in defenses alone, the jury reasonably could have concluded that *both* appellants had been lying based on "the bright light of other incriminating evidence"—most importantly, the timing of the robbery, appellant's employment at the arcade, the close friendship between appellant and Morgan, their admitted conversation the night before the robbery, and appellant's possession of the robbery proceeds two hours after the robbery. *See Derrington v. United States,* 488 A.2d 1314, 1336 (D.C.1985) (no plain error because even if jury believed defendant's alibi defense, it could infer guilt if he planned, enlisted, and received robbery proceeds), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 201 (1988); *Williams v. United States,* 382 A.2d 1, 9 (D.C.1978).

Appellant argues that the trial court erred in failing to use the applicable *Garris–Tillman–Ready* standard when it considered the severance motion. Appellant points out that, in denying appellant's initial severance request, the court explained it must assess whether the independent evidence against the defendant "would be sufficient to survive a motion for judgment of acquittal." The applicable standard, of course, requires the court to find evidence "beyond that" necessary to survive such a motion. *Garris,* 559 A.2d at 330; *Tillman,* 519 A.2d at 170; *Ready,* 445 A.2d at 987. While this standard, therefore, requires the trial court to consider a higher evidentiary threshold than the court initially employed, the court's action was harmless. Later in the trial during a hearing on a renewed severance motion, the court explicitly considered *Tillman* and found the evidence against both defendants "overwhelming."

■ Finally, appellant argues that the joint trial required two evidentiary rulings that sharply weakened his ability to present his own defense. First, the trial court limited appellant's cross-examination of Clark for bias in favor of Morgan by

refusing to allow appellant to show that Clark and Morgan had first met in jail. But for the joint trial, he says, appellant would have been free to pursue this line of questioning. Appellant, however, was permitted to cross-examine Clark about his parole status, his armed robbery conviction, his daily contacts with Morgan, and the risk Clark, a parolee, faced of serving the ten remaining years on his last prison sentence if he was implicated in this crime. Demonstrating that Morgan and Clark were friends in jail would have added little to what the jury already knew about Clark's bias and motive to lie.

Second, appellant claimed prejudice because the trial court did not allow him to explain fully why he approached Morgan for a $1,700 loan and why he would not have been suspicious of receiving the money in small bills. Appellant wanted to testify that Morgan was a drug dealer who always had money to lend him—"other crimes" evidence that would have been admissible at a separate trial. Appellant stresses that without this testimony, the jury had the impression that Morgan was a low-paying maintenance worker, making it illogical for appellant to approach him for a loan and leaving the jury skeptical that appellant was telling the truth. Appellant, however, was allowed to testify that Morgan "always had a lot of money" and that Morgan often carried small bills, leaving the jurors to draw their own conclusions about the source of the money. Moreover, testimony about Morgan's thriving drug business would have been of doubtful value to appellant because a successful drug dealer would appear to have less need than a maintenance worker to commit armed robbery in order to make a loan to a friend. Any prejudice to appellant from these evidentiary rulings did not merit severance.

In sum, the trial court did not abuse its discretion in failing to sever the trials of appellant and Morgan. The risk was minimal that the jury found these defendants guilty because of their conflicting defenses alone. Far more likely, appellant was convicted because his defense was not consistent with reasonable inferences the jury could draw from the government's other "powerful," circumstantial evidence of guilt.

## III.

Appellant also contends the trial court committed reversible error by failing to instruct the jury on an essential, *mens rea* element of aiding and abetting an armed robbery. He claims the jury should have been required to find that appellant knew Morgan was armed and intended to aid Morgan "in that respect." Appellant's Brief at 20.[7] Because appellant did not object at trial, we review for plain error. *See Watts v. United States,* 362 A.2d 706, 708 (D.C.1976) (en banc).

The trial court read the jury the standard instructions for aiding and abetting[8] and for robbery[9], adding to the robbery in-

---

7. Appellant's brief borrows the language "in that respect" from *United States v. Short,* 493 F.2d 1170, 1172 (9th Cir.), *cert. denied,* 419 U.S. 1000, 95 S.Ct. 317, 42 L.Ed.2d 275 (1974), without elaboration. We take the language to mean "in the armed robbery" in this case.

8. The trial court instructed the jury:
   Any person who advises, incites or connives at, counsels, commands, induces or procures an offense aids and abets the principal offender and is therefore punishable as a principal. Therefore, he is guilty of the offense as if he had personally committed each of the acts constituting the offense.
   A person aids and abets another in the commission of a crime if he knowingly associates himself in some way with the criminal venture with the intent to commit the crime,

participates in it as something he wishes to bring about, and seeks by some action of his to make it succeed.
*See* Criminal Jury Instructions for the District of Columbia, No. 4.02 (3d ed. 1978).

9. The court instructed the jury:
   Now, on the first count of the indictment regarding each of the defendants, they are charged with the offense of armed robbery. The essential elements of this offense, each of which the Government must prove beyond a reasonable doubt, are:
   1. That the defendant took property of some value from the complainant or the complaining witness against the will of the complainant.
   2. That the defendant took possession of the property by force or violence, whether against resistance or by sudden or stealthy seizure or

struction a "while armed" element [10] which read: "[t]hat at the time of the commission of the offense the defendant was armed with or had readily available a pistol." Appellant argues that these instructions failed to inform the jurors that they must find appellant knew Morgan was armed and intended to aid Morgan in an armed robbery. Moreover, appellant claims the error reflected by this omission was compounded when the trial court, in its unanimity instruction on aiding and abetting,[11] instructed the jury to find appellant guilty if he either drove the principal in the getaway car with "knowledge that a *robbery* had been committed" or helped plan "the *robbery*." (Emphasis added). Appellant stresses that, by failing to instruct that appellant had to know an "armed" robbery was planned or committed, the court effectively told the jury that it could find appellant guilty of armed robbery even though he only may have been aware of an unarmed robbery.

Appellant's arguments have some force, but, in order to understand why, some background from our caselaw is required. In discussing the law applicable to aiding and abetting, we have said it

> is well settled that [the aider and abettor] need not necessarily have intended the particular crime committed by the principal; an accessory is liable for any criminal act which in the ordinary course of things was the natural and probable consequence of the crime that he advised or commanded, although such conse-

quence may not have been intended by him.

*Morriss v. United States,* 554 A.2d 784, 789 (D.C.1989) (quoting *Hackney v. United States,* 389 A.2d 1336, 1342 (D.C.1978), cert. denied, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 95 (1979)) (appellant, an intermediary who solicited murder for hire, convicted of second degree murder carried out by another as natural and probable consequence of appellant's actions); *see Johnson v. United States,* 386 A.2d 710, 713 (D.C. 1978) (appellant, who started fistfight with police officer, convicted of assault with a dangerous weapon (automobile) when codefendant ran officer down with automobile as appellant "stepped aside" to provide a "clear path"); *Allen v. United States,* 383 A.2d 363, 367 (D.C.1978) (appellant, holding gun during armed robbery, convicted of assault with intent to kill while armed when co-defendant shot victim, since shooting was natural and probable consequence of armed robbery of victim who tried to run away).

As these authorities indicate, in many contexts, this court has applied the "natural and probable consequences" test in a way that minimizes the importance of the accomplice's intent. We have said that there is "no requirement that the aider and abettor have the identical intent of the principal at the time and place." *Allen,* 383 A.2d at 367. While an aider and abettor need not have "identical" intent, our decisions in *Morriss, Allen,* and *Johnson* have made clear—though without much specifici-

---

snatching or by putting the complaining witness in fear.
3. That the defendant took possession of the property from the person or the immediate actual possession of the complainant.
4. That after having so taken the property, the defendant carried that property away.
5. That the defendant took the property and carried that property away without right to do so and with the specific intent to steal it.
See Criminal Jury Instructions for the District of Columbia, No. 4.61 (3d ed. 1978).

10. Armed robbery "requires a showing of a taking of property of value *while armed* from the immediate actual possession of another against his [or her] will by force or violence or by putting in fear." *Head v. United States,* 451 A.2d 615, 624 (D.C.1982) (emphasis added).

11. The trial court gave the jury the following unanimity instruction:

> [I]n order for you to find Mr. Ingram guilty of *armed robbery,* all twelve of you must agree beyond a reasonable doubt that he participated in the offense as an aider and abettor by driving the person who committed the robbery away from the scene with the knowledge that a *robbery* had been committed or all twelve of you must agree beyond a reasonable doubt that although he did not act as the get-away driver, he participated in the offense as an aider and abettor by planning the robbery with the person who actually committed the *robbery.* (Emphasis added.)

ty—that "natural and probable consequences" implies some degree of foreseeability. But how foreseeable? As Judge Williams recently has noted,

[t]he phrase "natural and probable consequences" by no means communicates just how likely the forbidden act must have appeared to the accomplice. It could signify any position within a broad range: for example, all acts with a substantial probability of occurrence (e.g., one chance in five); acts that are more probable than not to occur; acts of very high probability (e.g., 90%); and acts so likely that their occurrence is a practical certainty. Given the imperfection of human knowledge, the latter is the equivalent of knowledge; an accomplice "knows" an act will happen if he is "practically certain" it will. See Model Penal Code § 2.02, at 236–37 n. 13 (1985). Our review of the cases suggests that no court uses one of these degrees of probability for all contexts; each varies the requirement with the circumstances.

*United States v. Powell*, 289 U.S.App.D.C. 131, ——, 929 F.2d 724, 726 (1991).

Appellant argues that, at least in the context of armed robbery, D.C.Code § 22–2901, –3202, where there is a separate enhancement provision calling for additional penalties if a robber is armed, a conviction for aiding and abetting requires a jury instruction and a finding that the accomplice "knew that [the principal] was armed and intended to use the weapon, and intended to aid him in that respect." *United States v. Short*, 493 F.2d 1170, 1172 (9th Cir.) (reversing for lack of proper instructions appellant's conviction for aiding and abetting bank robbery, 18 U.S.C. § 2113(a), aggravated by "assault[ing] any person, or put[ting] in jeopardy the life of any person by the use of a dangerous weapon or device," 18 U.S.C. § 2113(d)), *cert. denied,* 419 U.S. 1000, 95 S.Ct. 317, 42 L.Ed.2d 275 (1974); *see United States v. Jones,* 592 F.2d 1038, 1042 (9th Cir.) (same), *cert. denied,* 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979).[12]

Cases from other federal circuits also have emphasized that an accomplice's awareness of the principal offender's weapon is an essential element of conviction for armed robbery, although some of these courts have articulated a more flexible test: "the Government must show that the accomplice knew a dangerous weapon would be used *or at least that he was on notice of the likelihood of its use.*" *United States v. Sanborn,* 563 F.2d 488, 491 (1st Cir.1977) (emphasis added) (reversing conviction for aiding and abetting armed robbery, for erroneous failure to instruct jury that defendant "must be shown to have contemplated that a weapon would be used"); *United States v. Grubczak,* 793 F.2d 458, 463 (2d Cir.1986) (evidence sufficient for conviction for aiding and abetting armed bank robbery of a Wells Fargo depository where "jury reasonably could infer that defendant was aware of the likelihood that a gun would be used" (citing *Sanborn* )). Similarly, in *United States v. McCaskill,* 676 F.2d 995 (4th Cir.), *cert. denied,* 459 U.S. 1018, 103 S.Ct. 381, 74 L.Ed.2d 513 (1982), which considered sufficiency of the evidence for aiding and abetting a violation of 18 U.S.C. § 2113(d), the court—citing both *Short* and *Sanborn*—assumed for purposes of appeal that the appellant had been entitled to an in-

**12.** In *Abrams v. United States,* 531 A.2d 964 (D.C.1987), and in *Battle v. United States,* 515 A.2d 1120 (D.C.1986), this court held that an unarmed accomplice could be convicted of aiding and abetting an armed robbery (*Abrams* ) and of aiding and abetting a kidnapping while armed and an assault with intent to kidnap while armed (*Battle* ) and could then be sentenced, respectively, under the mandatory-minimum and the optional-maximum provisions of D.C.Code § 22–3202(a)(1) (1989), for enhancing sentences for crimes committed while armed. In both decisions we quoted from earlier cases reciting the rule that "[a]n individual who aids and abets the commission of a felony is legally responsible for all acts of the other person which are in furtherance of the common purpose, design or plan to commit the felony, or which are the natural or probable consequence of the act intended." *Abrams,* 531 A.2d at 969; *Battle,* 515 A.2d at 1128. We did not consider the issue posed here: the extent to which the accomplice had to be aware of the principal's likely use of a weapon to justify imposition of the enhanced penalties under D.C.Code § 22–3202 for aiding and abetting an armed offense.

struction that the jury must find "the defendant knew that his co-defendants who perpetrated the actual robbery were armed, thereby putting the defendant on notice of the likelihood that in the common criminal enterprise a gun or other dangerous weapon would be used." *McCaskill,* 676 F.2d at 998.[13]

█ This court has never addressed in detail the question of the extent to which an accused aider and abettor of an armed robbery must have been aware that the principal who committed the crime was armed. In *Hordge v. United States,* 545 A.2d 1249 (D.C.1988), appellant contended that, without proof he knew his codefendant would use a gun, the evidence was insufficient to support his conviction for aiding and abetting an armed robbery. *Id.* at 1253. We disagreed, concluding that "even if there were a requirement that the accomplice have actual knowledge that the principal was armed, the evidence before the jury permitted such a finding." *Id.* at 1256. We did not define our posited "actu-

al knowledge" requirement by reference to the Ninth Circuit "knew" and "intended" test in *Short* and *Jones.* Rather, we cited *Grubczak,* 793 F.2d at 463, and *Sanborn,* 563 F.2d at 490, both of which require that, for conviction of armed bank robbery, an accomplice only need be "on notice of the likelihood" a dangerous weapon will be used. *See Hordge,* 545 A.2d at 1256. We interpreted this *Grubczak/Sanborn* test to mean that, in order to convict an accomplice of armed robbery, it must have been "reasonably foreseeable [to the accomplice] that some type of weapon was required." *Id.*[14]

Implicitly, therefore, in testing the sufficiency of the evidence for conviction of an aider and abettor of an armed robbery under D.C.Code §§ 22-2901, -3202, we held that the "natural and probable consequence" of the alleged accomplice's actions will not lead to complicity with an armed (rather than unarmed) offense unless the accused could reasonably foresee a weapon would be "required." *Id.*[15] Accordingly, although jury instructions were not directly

---

**13.** In a different context, several federal circuit courts of appeal have considered the intent required for convicting an accomplice of a principal offender who commits a drug offense and accordingly is subject to conviction under 18 U.S.C. § 924(c)(1) for using or carrying a weapon. In at least three federal circuits, in reversing convictions, the courts have adopted virtually the same actual knowledge test the Ninth Circuit has employed in *Short* and in *Jones* for aiding and abetting an armed bank robbery. *See Powell,* 289 U.S.App.D.C. at ——, 929 F.2d at 728 (for aiding and abetting conviction, "accomplice must have known to a practical certainty that the principal would be carrying a gun"); *United States v. Morrow,* 923 F.2d 427, 436 (6th Cir.1991) (to convict for aiding and abetting, jury had to find appellant "somehow knowingly advised, counseled, encouraged, or assisted [the principal] in carrying the gun in relation to the underlying crimes"); *United States v. Hamblin,* 911 F.2d 551, 558 (11th Cir.1990) (for aiding and abetting conviction, government had "burden of proving that [accomplice] shared the criminal intent of his co-defendant [principal] with respect to the firearm charges" and thus "had to know about the gun beforehand").

Interestingly, in *United States v. Johnson,* 886 F.2d 1120, 1124 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990), in which appellant cited *Short* and alleged insufficient evidence to convict for aiding and abetting a violation of 18 U.S.C. § 924(c), the United States Court of Appeals for the Ninth

Circuit applied instead of *Short* a test derived from a conspiracy case, *United States v. Douglass,* 780 F.2d 1472, 1475-77 (9th Cir.1986) (citing *Pinkerton v. United States,* 328 U.S. 640, 647-48, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946)). The court sustained conviction because "the evidence support[ed] the inference that the appellants knew about the weapon—or at least, that they could reasonably have foreseen [the principal's] possession of it." *Johnson,* 886 F.2d at 1124; *see also Douglass,* 780 F.2d at 1476-77.

**14.** We did not analyze in *Hordge,* nor do we consider here, the relationship between a "reasonably foreseeable" test and a "notice of the likelihood" test.

**15.** We did not discuss in *Hordge* how clearly an accomplice had to know how the principal would use the weapon, *e.g.,* by brandishing it or merely having it available in case of need. *See generally Powell* (discussing *Short* test), 289 U.S. App.D.C. at ——, 929 F.2d at 728. Nor did we consider how clear the proof of the accomplice's knowledge had to be. We merely noted, without evaluating, appellant's concession that the government need not offer direct proof that an accomplice knew the principal was armed; rather, "it is sufficient if there is evidence to support a reasonable inference that the accomplice was aware the crime would be committed 'while armed.'" *Hordge,* 545 A.2d at 1256.

at issue in *Hordge,* we also implicitly held that, in order to receive the enhanced penalties applicable to a robbery "when armed," D.C.Code § 22–3202, the defendant is entitled to a "reasonably foreseeable" weapon instruction—which was not given here.

■ We review, however, for plain error, keeping in mind that *Hordge* was decided July 21, 1988, ten days before appellant's trial began. On this record, the jury reasonably could have inferred that appellant, acting reasonably, would have foreseen that Morgan would use a weapon during the robbery. Anyone who worked at this particular video arcade and planned to rob the back office on a Monday morning—based on inside knowledge—would reasonably expect an armed Brinks guard to arrive momentarily and not only would want to protect against that possibility but also would want protection against the risk of noise or delay that could attract the customers (who, according to the record, often came to that back office for change).

■ Because the record is sufficient to support conviction under a *Hordge* "reasonably foreseeable" weapon instruction, we ordinarily would say there was no plain error—no miscarriage of justice. *See McCaskill,* 676 F.2d at 1001–1003. But we must deal with a second consideration. We have held that failure to instruct the jury on every essential element of the crime is "per se reversible 'plain error,'" notwithstanding a failure to object when instructions were given. *Kind v. United States,* 529 A.2d 294, 295 (D.C.1987) (failure to instruct jury that knife "had to have a blade longer than three inches to qualify as a prohibited weapon within D.C.Code § 22–3214(b) (1981)" was "per se reversible 'plain error'") (quoting *Byrd v. United States,* 119 U.S.App.D.C. 360, 342 F.2d 939 (1965)); *see White v. United States,* 582 A.2d 774, 777–78 (D.C.1990) (failure to instruct jury on finding value of forged checks was "per se reversible 'plain error'"). *But see Carella v. California,* 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (applying harmless error standard when jury instructions erroneously relieved

government of burden to prove all essential elements of offense). Accordingly, we must consider whether the *Kind/White* analysis applies here. We conclude that it does not.

Although the trial court did not give a *Hordge* instruction, the court did instruct that, for conviction, appellant must have "knowingly associate[d] himself in some way with the criminal venture with the intent to commit the crime"—a crime in which the principal offender "was armed with or [had] readily available a pistol." Moreover, in giving the instruction on the essential elements of "robbery," the court reminded the jurors that each of the defendants was "charged with the offense of *armed* robbery." See *supra* note 9 (emphasis added). Furthermore, although the unanimity instruction in several places referred incorrectly to a "robbery," the first sentence referred to finding "Mr. Ingram guilty of armed robbery," which the other instructions also clearly identified as the crime charged. See *supra* note 11. For these reasons, the instructions sufficiently invoked required knowledge of all elements of an armed robbery; the court did not altogether fail to instruct the jury on an essential element of the crime, as in *Kind* and *White.* The instructions were sufficiently complete that, when coupled with a record that supports aiding and abetting under the *Hordge* test, we must conclude there was no plain error. Arguably, both counsel and court should have learned about *Hordge* during the ten-day period between issuance of that decision and the trial of this case. But *Hordge,* as such, did not analyze, let alone rule on, the instructional issue; and, given this court's traditional rulings on aiding and abetting which have focused rather vaguely on "natural and probable consequences," *see Morriss; Allen; Johnson,* we cannot say this trial should be undone because of the court's failure—without objection—to instruct more precisely on appellant's awareness of Morgan's gun.

## IV.

■ Appellant further contends the government changed its theory of the case

at the last minute, after the defense had rested, by adding an alternative theory of aiding and abetting: that appellant had planned the robbery. He says that this last-minute addition to the theory advanced during trial (that appellant was the getaway driver) constructively amended the indictment because it permitted the petit jury to convict on a theory different from the one charged by the grand jury. Alternatively, appellant argues that this last-minute, unforeseeable change resulted in a prejudicial variance from the indictment that prevented him from preparing a proper defense.

The Grand Jury Clause of the Fifth Amendment reads:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.

This clause requires that (1) the accused shall be apprised of the charges so that he or she can adequately prepare a defense; (2) the indictment shall describe the crime with sufficient specificity to enable a defendant to protect against future jeopardy for the same offense; and (3) the defendant shall be tried only on the charges specified in the indictment, in order to assure that the prosecutor or court will not alter the charges to fit the proof. *See Scutchings v. United States,* 509 A.2d 634, 636 (D.C. 1986); *Gaither v. United States,* 134 U.S. App.D.C. 154, 159, 413 F.2d 1061, 1066 (1969). In short, "a conviction must be based on an offense proved at trial and fully alleged in the indictment." *Scutchings,* 509 A.2d at 637.

Two kinds of problems arise when there is a deviation from an indictment.

An *amendment* of the indictment occurs when the *charging terms* of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed on them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the *evidence offered at trial* proves facts materially different from those alleged in the indictment.

*Scutchings,* 509 A.2d at 636 (some emphasis added; footnotes omitted) (quoting *Gaither,* 134 U.S.App.D.C. at 164, 413 F.2d at 1071).

█ Because an amendment of an indictment changes its charging terms, it deprives the defendant of the constitutional right to be tried upon the charge subjected to the grand jury's scrutiny and is *per se* reversible error. *See Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). A literal amendment occurs, for instance, when the trial court strikes a specific, relevant allegation the grand jury charged—an allegation necessary to prove the offense—so that the defendant can be convicted without proof of that allegation. *See id.* at 7, 7 S.Ct. at 784; *see also United States v. Miller,* 471 U.S. 130, 144, 105 S.Ct. 1811, 1819, 85 L.Ed.2d 99 (1985) (not unconstitutional amendment to drop from indictment allegations unnecessary to prove offense). A constructive amendment occurs when the trial court permits the jury to consider, under the indictment, an element of the charge that differs from the specific words of the indictment. *See Stirone v. United States,* 361 U.S. 212, 217–18, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960) (indictment limited to extortion by interference with interstate transportation of sand expanded by constructive amendment to include interference with sand *and steel*). An amendment, therefore, creates a "substantial likelihood that [the defendant] may have been convicted of a crime different from that charged by the grand jury." *Barker v. United States,* 373 A.2d 1215, 1219 (D.C. 1977) (quoting *United States v. Somers,* 496 F.2d 723, 744 (3d Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 57, 42 L.Ed.2d 58 (1974)). It follows that, in evaluating whether the indictment has been amended, the reviewing court compares the evidence and the judge's instructions to the jury with the charge specified in the indictment. *See Scutchings,* 509 A.2d at 638 (conviction reversed where indictment charged "threats and force" while evidence and jury instructions presented "bribery, threats or force"); *see, e.g., Giles v. United States,* 472 A.2d 881, 883 (D.C.1984).

A *variance,* on the other hand, occurs when the facts proved at trial materially differ from the facts contained in the indictment "but the essential elements of the offense are the same." *United States v. Keller,* 916 F.2d 628, 634 (11th Cir.1990). Because the defendant lacks notice of the actual details of the charge against him, variances may infringe upon the " 'appraisal function' of the sixth amendment which requires that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation....' " *United States v. Ford,* 872 F.2d 1231, 1235 (6th Cir.1989) (quoting J. MOORE, MOORE'S FEDERAL PRACTICE, ¶ 7.05[1] (1988)), *cert. denied,* —— U.S. ——, 111 S.Ct. 124, 112 L.Ed.2d 93 (1990).[16] In contrast with an amendment, a variance will not warrant dismissal "except upon a showing of prejudice." *Gaither,* 134 U.S. App.D.C. at 165, 413 F.2d at 1071; *see Scutchings,* 509 A.2d at 638 n. 10 (if only variance had been naming of incorrect party, variance might have been harmless).

### A.

According to appellant's indictment:
FIRST COUNT:
On or about May 9, 1988, within the District of Columbia, Bobby D. Morgan and Terrence Ingram, while armed with a dangerous weapon, that is, a pistol, by force and violence, against resistance and by putting in fear, stole and took from the person and from the immediate actual possession of William Williams, property of value belonging to Time–Out Amusement Center, Inc., doing business as Station Break Family Amusement Center, consisting of money.

The trial court instructed the jury that it could find appellant guilty if·he aided and abetted this armed robbery "by driving the person who committed the robbery away from the scene ... or ... by planning the robbery with the person who actually committed the robbery." See *supra* note 11.

It is well settled that if an indictment charges an individual as a principal, but the accused is convicted as an aider and abettor, there is not a constructive amendment or variance of the indictment. *See* D.C.Code § 22–105 (1989); *Barker,* 373 A.2d at 1219. More specifically, because D.C.Code § 22–105 (1989) (aiding and abetting) "makes no distinction between one who acts as a principal and one who merely assists the commission of a crime as an aider and abettor," the trial court must instruct the jury—as in this case—that guilt may be premised on a defendant's acting either as principal or as aider and abettor. *Barker,* 373 A.2d at 1219. This amplification of the language of the indictment is deemed not to "add a *new* or *different* offense to the indictment," and thus—as in this case—does not constructively amend it. *Id.* (emphasis in original). Furthermore, because " '[a]n aider and abettor may be indicted *directly* with the commission of the substantive crime and the charge may be supported by proof that he *only* aided and abetted in its commission' "—as in this case—there will be no variance if the accused is charged as principal but the proof of trial shows he was an aider and abettor. *Id.* (emphasis in original) (quoting *Nassif v. United States,* 370 F.2d 147, 155 (8th Cir.1966)).

### B.

Appellant contends, however, that by shifting its theory of aiding and abetting from getaway driver to planner, the government constructively amended the charges in the indictment. This would be true if the indictment had specified a particular theory of aiding and abetting but the evidence and jury instructions charged a different theory of liability. *See Stirone,* 361 U.S. at 219, 80 S.Ct. at 274. The indictment in this case, however, did not specify the means by which appellant aided and abetted the robbery. Because the particular theory of aiding or abetting is not

---

16. "A mere variance becomes a constructive amendment when facts introduced at trial go to an *essential element* of the offense charged, and the facts are different from the facts that would support the offense charged in the indictment." *Giles,* 472 A.2d 881, 883 (D.C.1984) (emphasis in original).

an essential element of the offense, *see Barker*, 373 A.2d at 1219; D.C.Code § 22–105; *supra* note 3, the government was not obliged to explicate its theory in the indictment. Under these circumstances, there was no constructive amendment.

■ Alternatively, appellant argues for constructive amendment by stressing that if the indictment had been intended to cover "planning," it would have specified a broader time period than "on or about May 9, 1988." We cannot agree. When an indictment charges that the offense occurred "on or about" a certain date, as it did here, a defendant is on notice that a particular date is not critical. *See United States v. Leibowitz*, 857 F.2d 373, 379 (7th Cir.1988), *cert. denied*, 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989). The evidence will conform to the indictment in such circumstances if it establishes that the offense was committed on a date reasonably close to the one alleged. *See Jeffcoat v. United States*, 551 A.2d 1301, 1304 (D.C. 1988); Criminal Jury Instructions for the District of Columbia, No. 3.10 (3d ed. 1978). Here, although the codefendants had been friends for a long time, it was reasonable for the parties and the jury to conclude from the evidence that the indictment contemplated the two defendants were planning the robbery when they conferred the night before. *See Morris v. United States*, 564 A.2d 746, 750 (D.C.1989) (reasonable to infer that defendants who conversed shortly before rape were planning the crime.) Accordingly, there was no constructive amendment.

### C.

■ We turn to appellant's variance argument. The indictment alleged that appellant and Morgan committed the robbery while armed, that the robbery occurred on May 9, 1988, that the arcade manager was the victim, and that the object of the robbery was the arcade's money. The evidence at trial established these facts, and nothing presented at trial suggested that the grand jury was not privy to them. There is no hint that the evidence changed from indictment to trial; there were, for example, no perjured witnesses as there were in *Scutchings*, 509 A.2d at 639 (key witness' testimony at trial substantially conflicted with grand jury testimony), or in *Wright v. United States*, 564 A.2d 734, 737 (D.C.1989) (convictions reversed because indictment based on false testimony).

Appellant argues, however, that before both the grand jury and the petit jury the government presented and argued the evidence that appellant was the getaway driver. Then, continues appellant, at the last minute, the government switched and argued to the petit jury (but never to the grand jury) that a third person might have driven the getaway car while appellant helped plan the robbery.[17] In this way, says appellant, the government argued evidence at trial which could not have been before the grand jury,[18] *see Barker*, 373 A.2d at 1219, and therefore substantially prejudiced his defense.

We do not know what inferences the grand jury drew from the evidence. *See*

---

**17.** The prosecutor asked the jury to convict appellant as the planner by arguing:

> We did not have a witness who saw the getaway driver. That's a hard fact.
> And because of that, you could go back there and you could decide that you were not sure beyond a reasonable doubt who that getaway driver was and that would be reasonable.
> You could also look at the rest of the hard facts and using your common sense you could decide that this robbery could not have been committed unless Terrence Ingram had given the necessary knowledge to Bobby Morgan, told him what to do and how to do it.
> You are not sure if he was there, but afterwards he got his share of money for giving

> Bobby Morgan that information. And under that factual scenario, you could find him guilty as an aider and abettor of the armed robbery as under the other factual scenario.

**18.** At the end of trial during a discussion of the unanimity instructions, the trial court expressed concern that the government had only presented the getaway driver theory to the grand jury. The prosecutor denied this characterization of the government's argument, saying: "Your Honor, I don't believe a particular theory [of aiding and abetting] was ever before the grand jury. They heard testimony on the evidence in this case."

*Russell v. United States,* 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962) (improper for prosecutor or court to second-guess grand jury). Moreover, we cannot say that the grand jury could not have drawn the inference appellant now questions: that he was a planner if not a getaway driver. Furthermore, because the arguments of counsel are not evidence and the jury was so instructed, these arguments themselves cannot amount to a variance. Finally, the trial court's unanimity instruction, see *supra* note 11, did not require the jury to find appellant guilty of aiding and abetting someone other than Morgan, as was alleged in the indictment. In short, because the evidence and instructions did not introduce new facts or broaden the base for possible conviction beyond aiding and abetting Morgan as principal, the jury was not asked to consider evidence that was not before the grand jury (prejudicial variance), let alone changes in the essential elements of the armed robbery outlined in the indictment (constructive amendment).

### D.

Appellant also argues that he was severely prejudiced because the government did not put him on notice that its aiding and abetting theory included planning the armed robbery until both sides had rested and the evidence was closed. *See Ford,* 872 F.2d at 1235. Appellant objected strenuously when the government asked for a unanimity instruction outlining the two means by which the jury could find appellant had aided and abetted the armed robbery. See *supra* note 11. He now argues that the parties' understanding throughout the status hearings and the trial was that the government had charged him only as the getaway driver, and he stresses that he had prepared his alibi defense with that theory exclusively in mind. The government, however, denied that it promised to treat appellant only as the getaway driver.

The record is ambiguous on how much notice appellant received—or needed—that he might be charged as a "planner." In

opening statement, the government argued:

> Mr. Ingram in fact ... had been an employee [at the arcade] for several months. Ladies and gentlemen, our evidence will show you that this was an inside job; that the Brinks truck comes at 10:30 a.m. every Monday morning, and that would be the only time that that money would be lying out there.

This opening statement suggested that the government was laying the foundation for the theory that appellant was the inside source for the "inside job." Moreover, in appellant's own testimony, he took care to try to dispel the notion that he had given any inside information to Morgan. This testimony therefore suggests that appellant was aware of the powerful inference that could be drawn solely from his conversations with Morgan the night before and his possession of the stolen money afterwards—the inference that he was paid off for an insider's tip. *See Derrington,* 488 A.2d at 1336.

We are not persuaded that the government substantially prejudiced the defendant when it failed to make more explicit how appellant could be found criminally responsible as a source of inside information. Appellant knew the gravamen of the charge against him was his aiding and abetting an armed robbery on or about May 9, 1988. He was not prejudiced by relying exclusively on an alibi defense. He may or may not, as part of that story, have had to acknowledge speaking with Morgan by telephone about a loan and borrowing Morgan's car the night before the armed robbery (although it is hard if not impossible to imagine how his alibi could have stood scrutiny without a conversation with Morgan shortly before the crime took place). In any event, the fact remains that any alibi defense surely would not have placed appellant in a position where he could not have spoken with Morgan by telephone and helped plan the crime.

In sum, the indictment adequately informed appellant of the pending charges, and the government did not produce evidence which constructively amended the in-

dictment or changed the proof into a prejudicial variance. The government was entitled to aiding and abetting instructions applicable to all the evidence.

*Affirmed.*